[Civ. No. 31070.   Second Dist., Div. Four.   Sept. 22, 1967.]

WANDA SOMMERS et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

William F. Peters and Richard H. Zahm, Jr., for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and Claude E. Hilker, Assistant City Attorneys, and Charles E. Mattson, Deputy City Attorney, for Defendants and Respondents.

FOX, J.*—This is a mandate proceeding brought by appellant property owners against the City of Los Angeles and its appropriate administrative officials to require the issuance of a building permit for the remodeling of a gasoline service

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

station. Issuance of the permit was refused because the property owners failed to comply with the demands made upon them under the provisions of section 12.37 of the Los Angeles Municipal Code. The property owners contend that said section is unconstitutional, both on its face and as applied to them. The court denied the property owners any relief. They have appealed.

Appellants are the owners of a parcel of real property located at the intersection of two secondary highways, Hillhurst and Franklin Avenues, in the City of Los Angeles. In 1964, appellants desired a building permit in order to construct certain improvements on their property. At that time, approximately 100 feet of the property was occupied by a gasoline service station that was 20 to 25 years old, and the remaining 50 feet of the lot fronting on Hillhurst was occupied by an apartment building. An expert witness described the station as ''marginal to bad.'' Available parking in front of the existing building was described as inadequate.

Appellants requested a building permit in order to enlarge the area of the lot used for service station purposes. They contemplate demolishing the apartment house and blacktopping the area the building occupied for parking purposes for the service station, as well as to provide additional frontage for ingress to the service station. This improvement would extend the service station use over the entire parcel of property. Additionally, the proposed improvements call for a modern service station canopy to be constructed on the station adjacent to Hillhurst. The station has short frontage on the Franklin Avenue side and there is no opportunity to put a pump island on that side. Appellants, however, propose to relocate the existing pump island on Hillhurst to take advantage of additional property obtained for service station use, to establish a large modern canopy on a new pump island along Hillhurst, to construct better lighting for the station, and to remodel the existing building.

An expert witness on behalf of the lessee characterized the location of the existing station as a ''good neighborhood location''; that when traffic increases on a street the likelihood of getting increased business is enhanced. The witness further testified that in determining the desirability of a service station site, the convenience of getting into and out of the station is a primary factor; that if a station is modernized there would be an expected increase in business, and this increase would mean more cars going in and out of the sta-

tion; that this station draws a heavy percentage (60-70 percent) of its business from the neighborhood; that the trend toward multiple dwellings in the neighborhood would result in an expected increase in business at the station. Appellants' rental income from the station is presently $250 monthly, but it would increase under the terms of a new lease, if the proposed improvements were installed, to $450 monthly.

Appellants attempted to show a decrease in vehicular traffic from September 11, 1964, a Friday, to July 7, 1965, a Wednesday, by introducing traffic counts on these streets showing such a decrease. However, a traffic engineer expert for the city testified and introduced in evidence a report which indicated that there is an average of 15 percent more vehicular traffic on a Friday than on a Wednesday.

When appellants applied for a building permit in order to make the stated improvements and enlargements, the city engineer refused to issue a building permit for the requested purposes unless and until, under section 12.37 of the Municipal Code, appellants dedicated an easement for public street purposes over the southerly 13 feet of the property abutting Franklin Avenue and over the easterly 3 feet abutting Hillhurst Avenue and a 15' x 15' cut-corner in the southeasterly corner of the property, or until such time as improvements of these secondary highways were otherwise assured to the master plan width. Appellants appealed this decision to the Board of Public Works which sustained the requirements specified by the city engineer. Appellants then requested and received a hearing before the City Council of the City of Los Angeles, and after such hearing the required dedication for the right-of-way on Franklin Avenue was reduced by the council from 13 feet to 10 feet, but the other requirements were sustained.

Section 12.37 of the Los Angeles Municipal Code provides in effect that, with certain limited exceptions, no building or structure shall be erected or enlarged on any lot in an R-3 or less restricted zone, if such lot abuts on a major or secondary highway, unless the half of the highway located adjacent to such lot has been dedicated or improved to its master plan width. The section then provides certain limitations upon and exceptions to such restriction and a procedure by which a variance from the restrictions and requirements of the section may be procured, or dedication can take place expeditiously if it is desired to build immediately rather than await the widening of the street, if such widening is necessary, by some other means.

Following the trial and a view of the premises, the court made comprehensive findings, the more important of which we summarize:

1. Section 12.37 is a part of the comprehensive zoning plan of the City of Los Angeles, and the conditions that it imposes upon the use and development of land are comparable to other land use regulations and conditions contained in such plan.

2. In order to meet the needs, caused by population growth, the planned and controlled use and development of land within the city under comprehensive zoning regulations are essential. Because of the effect of land use and building development upon street traffic and transportation, a master plan for street highway development is imperative. The evidence substantiates the need for secondary highways, such as Hillhurst and Franklin Avenues, to a width of 86 feet with 66 feet of roadway and 20 feet of sidewalk, including parkway.

3. The present internal street system of the City of Los Angeles is materially and substantially deficient and inadequate, and the deficiency is increasing at an increasing rate, due primarily to rapid growth and continuing increase in population, motor vehicle ownership, and building construction.

4. Section 12.37 is necessary in order to implement and effectuate the city's master plan of highways and freeways, and the requirements and conditions imposed by said section benefit both the affected property and the general public.

5. The construction of high density buildings such as apartment houses, commercial and industrial buildings, in R-3 and less restricted zones in the City of Los Angeles, directly and materially affects the city's traffic and transportation facilities through increased traffic and use of streets. The extent of traffic generation is determined by the density and type of land use development within the community.

6. The conditions placed upon land use and development in R-3 and less restrictive zones by section 12.37 of the Los Angeles Municipal Code bear a substantial relationship to the accomplishment of a proper public purpose within the police power, and are not arbitrary or unreasonable. The means selected by the city's legislative body by the formation and adoption of section 12.37 are matters upon which reasonable minds might differ.

7. The application of section 12.37 to property affected by it does not deprive the petitioners or anyone of the entire use

or economic benefit of that property, and said section is reasonable in object and not arbitrary in operation.

8. The movement of traffic from land directly onto an abutting street has an effect upon the capacity of that street and creates turbulence which is an interference with the smooth flow of traffic. The widening of the intersection of Hillhurst and Franklin Avenues would tend to facilitate the movement of traffic to and from appellants' service station. The addition of another 10 feet on Franklin Avenue would increase the capacity of the street and thereby facilitate the flow of vehicular traffic, including vehicular traffic into and out of appellants' service station.

9. The dedication required by the city by and pursuant to the provisions of section 12.37 would not cause any undue hardship or financial loss to appellants.

10. The classifications provided for in section 12.37 between builders and nonbuilders, between highways and local streets, and between R-1 and R-2 zones, and all other zones are reasonable and not arbitrary. Such classifications rest upon an inherent and intrinsic difference between both the persons and subjects both included and excluded by the terms of the section.

As to conclusions of law, the court declared, *inter alia*:

1. Section 12.37 bears a substantial relationship to the accomplishment of a proper public purpose within the police power, and is not unreasonable or arbitrary either in object or application.

2. Said section is a valid exercise of the city's police power, particularly as such power relates to comprehensive master planning and zoning, and does not constitute an unlawful taking of property in violation of the due process clauses of either the federal or California Constitutions.

3. Under the evidence presented to the court, section 12.37 of the Los Angeles Municipal Code has not been unlawfully applied to appellants.

█ At the outset it should be noted that every intendment is in favor of the validity of zoning legislation since it represents an exercise of the police power by the legislative body. The presumption is that the measure is justified under the police power and adapted to promote the public health, safety, morals and general welfare.

''The courts may differ with the zoning authorities as to the 'necessity or propriety of an enactment,' but so long as it remains a 'question upon which reasonable minds might

differ," there will be no judicial interference with the municipality's determination of policy." (*Clemons* v. *City of Los Angeles*, 36 Cal.2d 95, 98 [222 P.2d 439].)

Of course, the police power is not static but flexible and expandable to meet changing conditions of modern life. This principle is clearly expressed by the Supreme Court in *Miller* v. *Board of Public Works*, 195 Cal. 477, at page 485 [234 P. 381, 38 A.L.R. 1479] : "Thus it is apparent that the police power is not a circumscribed prerogative, but is elastic and, in keeping with the growth of knowledge and the belief in the popular mind of the need for its application, capable of expansion to meet existing conditions of modern life and thereby keep pace with the social, economic, moral, and intellectual evolution of the human race. In brief, 'there is nothing known to the law that keeps more in step with human progress than does the exercise of this power.' "

This principle was reiterated by our Supreme Court in *Consolidated Rock Products Co.* v. *City of Los Angeles*, 57 Cal.2d 515 [20 Cal.Rptr. 638, 370 P.2d 342], where the court went on to emphasize that the proper exercise of police power is primarily a legislative and not a judicial function. The court stated the principle in this language at page 522: "As a corollary to this recognized principle of the capacity of the police power to meet the reasonable current requirements of time and place and period in history is the equally well settled rule that the determination of the necessity and form of such regulations, as is true with all exercises of the police power, is primarily a legislative and not a judicial function, and is to be tested in the courts not by what the judges individually or collectively may think of the wisdom or necessity of a particular regulation, but solely by the answer to the question is there any reasonable basis in fact to support the legislative determination of the regulation's wisdom and necessity ? "

Since appellants contend that section 12.37 is unconstitutional on its face, and since that section is a part of article 2 of chapter 1 of the Los Angeles Municipal Code which is entitled "The Comprehensive Zoning Plan of the City of Los Angeles," it seems appropriate that the purpose of said zoning plan should be stated. In section 12.02 we find the purpose of said zoning plan set forth as follows: "The purpose of this Article is to consolidate and coordinate all existing zoning regulations and provisions into one comprehensive zoning plan in order to designate, regulate and

restrict the location and use of buildings, structure and land, for agriculture, commerce, trade, industry or other purposes; to regulate and limit the height, number of stories, and size of buildings and other structures, hereafter erected or altered; to regulate and determine the size of yards and other open spaces and to regulate and limit the density of population; and for said purposes to divide the City into Zones of such number, shape and area as may be deemed best suited to carry out these regulations and provide for their enforcement. Further, such regulations are deemed necessary in order to encourage the most appropriate use of land; to conserve and stabilize the value of property; to provide adequate open spaces for light and air; and to prevent and fight fires; to prevent undue concentration of population; to lessen congestion on streets; to facilitate adequate provisions for community utilities and facilities such as transportation, water, sewage, schools, parks and other public requirements; and to promote health, safety, and the general welfare, all in accordance with a comprehensive plan.'' That this purpose is in the public interest and valid was established in the *Miller* case, *supra*; *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388], and *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114, 54 A.L.R. 1016].

It will be noted that section 12.37 imposes a restriction on the use of land within the city which is located in the R-3 and less restrictive zones (*i.e.,* R-3 through M-3 which included the C-2 zone in which appellants' property is located); but this basic limitation upon the use of land in zones R-3 through M-3 is qualified by provisions that the maximum area of land required to be so dedicated shall not exceed 25 percent of the area of any lot, that the dedication shall not reduce the lot below a width of 50 feet or an area of 5,000 square feet. In addition, the limitation of the section upon the use of land in zones R-3 through M-3 is expressly inapplicable to the construction of a single family dwelling with customary accessory buildings when erected on a vacant lot.

Subsection H sets forth the standards for highway dedication and improvement and provides for variances therefrom in cases of undue hardship and impracticability. Subsection I provides an appeal procedure for the further consideration of a variance which appellants availed themselves of in this case and secured a modification of the requirements imposed by the city engineer. This subsection provides an appeal to the Board of Public Works and then to the City Council which is

empowered to make such modifications in the requirements ". . . as they shall determine are required to prevent any unreasonable hardship under the facts of each case. . . ." Without going into other protective features, it is apparent from the foregoing that substantial safeguards have been provided for the benefit of the property owner.

We come now to the cases dealing with the right of government to require under the police power the dedication of rights-of-way as a condition to the development of particular property. It should here be noted that the provisions of section 12.37 do not require the dedication or improvement of private property; they do under the police power sharply limit the use of private property adjacent to important city highways as part of the comprehensive zoning plan until such time as the development of the adjacent half of such highways is completed or reasonably assured, by whatever means. No doubt the practical effect of these provisions, in many instances, is to procure the dedication of the highway rights-of-way in order to gain the *immediate* right to use the remainder of the land to its maximum economic use. These dedications which are made under the police power pursuant to the provisions of section 12.37 are of course in sharp contrast to acquisitions under eminent domain where property is taken and paid for or purchased under threat of such proceedings.

The leading California case in this area of the law is *Ayres* v. *City Council of City of Los Angeles,* 34 Cal.2d 31 [207 P.2d 1, 11 A.L.R.2d 503]. That case upheld the validity of conditions to the approval of a subdivision map that certain dedications of land for street purposes be made over and above those proposed by the subdivider who contended (just as appellants do here) that such additionally required dedications (and particularly those for additions to existing major streets) would be of relatively small benefit to the lots within the subdivision as compared to the benefit to the city at large and thus amounted to a taking of private property for public use without compensation. After pointing out benefits to the lots in the subdivision from such required dedication, the court stated, at page 41: "Questions of reasonableness and necessity depend on matters of fact. They are not abstract ideas or theories. In a growing metropolitan area each additional subdivision adds to the traffic burden. It is no defense to the conditions imposed in a subdivision map proceeding that their fulfillment will incidentally also benefit the city as a whole. Nor is it a valid objection to say that the conditions

contemplate future as well as more immediate needs. Potential as well as present population factors affecting the subdivision and the neighborhood generally are appropriate for consideration.''

It is worthy of note that, in upholding the requirements of the dedication of land for street purposes as a condition for the approval of the subdivision, the *Ayres* court cited and relied upon the *Euclid* case, *supra*, and then concluded with this language, at page 43: ''. . . while the meaning of constitutional guaranties is invariable, the scope of their application must expand or contract to meet the physical changes which are constantly coming within the field of their operation; and that only those regulations must fall which clearly do not meet the constitutional meaning as applied to changing conditions. Similar expressions are found in [*Miller, supra*; *Zahn, supra*; and *Dwyer* v. *City Council*, 200 Cal. 505 (253 P. 932)]. These declarations by the Supreme Court of the United States and of this state more than 20 years ago are also pertinent in this case to uphold the conclusions of reasonableness based on the record.''

Another case applying the principle here under consideration is *Bringle* v. *Board of Supervisors of Orange County*, 54 Cal.2d 86 [4 Cal.Rptr. 493, 351 P.2d 765]. In that case Bringle applied for and was granted a five-year variance to use his agriculturally zoned land in connection with his excavating business and to maintain a storage yard for some of his equipment. The grant of a variance, however, was conditioned upon his dedicating to the county without compensation a permanent easement 30 feet wide and 132 feet long for right-of-way for the widening of the adjacent street. Bringle then challenged in court the legality of such condition. In upholding the validity of this condition, the Supeme Court stated, at pages 88-89: ''Conditions may be attached to the granting of a variance in order to preserve the general purposes and intent of the zoning ordinance. [Citations.] One of the general purposes is to provide for adequate streets and highways, and a street that might be adequate for the needs of an agricultural area might be inadequate if part of the area is to be used for another purpose. In an analogous situation it has been held that a city may require the dedication of land for the widening of an existing street as a condition to its approval of a subdivision map and that such a condition, where reasonably related to the increased traffic and other needs of the proposed subdivision, does not constitute a taking

of private property without compensation (*Ayres* v. *City Council of City of Los Angeles,* 34 Cal.2d 31]).

"... Where an authorized board grants a variance it will be presumed that official duty was performed and that the existence of the necessary facts was found, and the board's action will not be disturbed in the absence of a clear showing of an abuse of discretion. [Citations.]"

In *Southern Pac. Co.* v. *City of Los Angeles,* 242 Cal.App. 2d 38 [51 Cal.Rptr. 197] (hear. den.), Division One of this court directly passed upon the constitutionality of section 12.37. After a thorough consideration of the question and an exhaustive review of the authorities applicable to police power acquisitions, the court concluded that section 12.37 is not unconstitutional on its face. In the course of its opinion, the court noted that section 12.37 is a zoning ordinance, appearing under an article of the Municipal Code entitled, "The Comprehensive Zoning Plan of the City of Los Angeles." The court then observed that, "It is contended by appellant that 'A zoning ordinance may not be used as a device to take property for public use without the payment of compensation' [citation], such action being contrary to the protection guaranteed by the federal and state Constitutions in that regard. To such contention respondents reply that the dedication or taking under the subject ordinance is a form of 'police power acquisition' as contrasted to acquisition by eminent domain.'' (At page 42.) These are the precise contentions that the respective parties are advancing in the case at bench. The court then concluded, at page 45: "We are of the view that there is validity to respondents' argument that since the courts have recognized that the Legislature may properly insist upon dedication of the means of access—and that, of necessity, implies sufficient access—both in subdivision and nonsubdivision cases, a flexible police power may require the dedication of additional access, under the circumstances here, when the need therefor arises."

The court then discussed the often vague line between police power and eminent domain, pointing out that each case must stand or fall on its own particular facts. The court stated, at page 46: "... Numerous authorities, state and federal, have also been cited by each side. It will suffice to observe that they reflect the continuing conflict between the public interest manifested through the exercise of the police power on the one hand, and on the other hand, the property interest of the land owner which is disclosed through the

exercise of eminent domain. As pointed out in *Bacich* v. *Board of Control*, 23 Cal.2d 343, 351 [144 P.2d 818] : 'In some degree those opposed policies are manifested in the conflict between the constitutional mandate that compensation be paid when private property is taken . . . for a public purpose and the exercise of police power where compensation need not be paid. The line between those two concepts is far from clearly marked.' Each case, of course, must stand or fall on its own particular facts; and in our view the decision in *Ayres* is still another application of the principle that the exercise of the police power in traffic regulation cases 'is simply a risk the property owner assumes when he lives in modern society under modern traffic conditions' [citation]—and particularly if he lives in the metropolitan area of Los Angeles.''

Apposite in reaching this conclusion is this further observation of the court, at page 47 : ''Our conclusion that the ordinance is not unconstitutional on its face finds further support in light of the fact that it is appellant, not respondents, who wishes to put its property to the use now contemplated notwithstanding the increase in traffic which will be generated thereby. If it desires the benefits resulting from the improvement or change in the character of the land, it must meet any reasonable condition imposed by respondents before the issuance of a building permit—such undoubtedly is the holding in *Ayres*, which case is cited with approval by the New York Court of Appeals as another instance where compliance with pertinent local ordinances has been sustained as a valid exercise of the police power. (*Brous* v. *Smith*, 304 N.Y. 164 [106 N.E.2d 503].)''

It is our opinion that the findings we summarized earlier in this opinion fully justify and establish the necessity for enacting section 12.37. In an effort to challenge these findings, appellants argue that there is no immediate need for the application of section 12.37 in the facts of this case; that the public need shown is speculative and remote; and that there is no ''emergency or danger'' requiring the enactment of section 12.37; that the need shown by the city is based solely on its future growth; and that there is no assurance that Franklin and Hillhurst Avenues will be either retained as secondary highways or improved as secondary highways by the city.

Insofar as appellants contend that the findings of fact relative to necessity are not supported by the evidence, we believe they are in error. It is our view that the evidence is ample to establish an immediate need for section 12.37. The evidence shows that: Hillhurst and Franklin Avenues are presently

secondary highways on the master plan of highways and freeways. The chief deputy city engineer of the City of Los Angeles testified that the deficiences for the 20-year period 1960 through 1980 would be 800 million dollars for the major and secondary highways of the city, and that a later study, made in 1964, indicated that the street deficiences for such highways in the city for the 10-year period 1964 through 1974 was 745 million dollars. The deficiencies for such highways in the city from the 1961 study to the 1964 study had increased from 40 million dollars to $74,500,000 annually, with total funds available to the city of 20 million dollars annually at the time of trial. As established by the studies of professional traffic highway engineers, secondary highways of a total width of 86 feet and a roadway width of 66 feet are required to carry the traffic on such streets. Franklin Avenue presently has a 60-foot overall right-of-way with a 40-foot roadway, while Hillhurst Avenue has an 80-foot overall right-of-way. Franklin Avenue is inadequate in capacity, and was among the deficient secondary highways listed in the study, becoming deficient in 1964, the last year a study was made of such deficiencies.

An expert planner testified there was ''no probability that Hillhurst and Franklin Avenues would be removed from the master plan as secondary highways.'' There was also testimony that Franklin Avenue with parking permitted is being traveled at more than practical capacity; Hillhurst also is being traveled slightly over capacity with parking permitted.

At the time of trial, some 1,728 dedications had been received by the city pursuant to the provisions of section 12.37 although the ordinance had been in effect only a little more than three years. It was estimated that if the only means of implementing the master highway plan were eminent domain, it would take somewhere in the neighborhood of 100 years to achieve full capacity. There was also testimony that city street deficiencies were increasing, with no end in sight. The city, in addition to obtaining needed property for street purposes, had received additional apportionments of gasoline tax monies (to be used for street improvements) in the amount of two and a half million dollars for the year 1965-1966 from the State of California as the result of dedications made pursutant to section 12.37.

Property along major and secondary highways is usually zoned and used for commercial, industrial and multiple dwellings. The construction of multiple dwellings results in greater

traffic generation per square foot of land, for car ownership is directly related to the number of dwelling units. Property at the intersection of two highways (as in this case) is ordinarily used for business purposes because it is easily accessible to traffic on those highways. Freeway openings, according to testimony, result only in temporary reductions of traffic on adjacent surface streets.

The court in *Southern Pac. Co.* v. *City of Los Angeles, supra,* 242 Cal.App.2d 38, in holding section 12.37 valid on its face, pointed out (p. 48) that: ". . . at this stage of the proceedings the determination below must be sustained if the necessity and propriety of the legislative action is one upon which reasonable minds may differ." (*Consolidated Rock Products Co.* v. *City of Los Angeles, supra,* 57 Cal.2d 515.) Guided by this principle and bearing in mind the comprehensive zoning plan of the City of Los Angeles, the findings of the trial court and the evidence in support of said findings, we have no difficulty in concluding that all the relevant facts and circumstances amply warrant the legislation here challenged and that it is not unconstitutional.

We come now to a determination as to whether section 12.37 can be constitutionally applied to the appellants. They argue, in sum, that no additional traffic will be generated by the planned construction and remodeling; that the proposed improvement does not change the present use nor cause additional burdens upon the adjacent streets; and that they will suffer a substantial detriment because the land to be dedicated is valued at $5,000.

The evidence established that the appellants intend to enlarge their gasoline service station operations upon the property involved; that the improvements would increase the area used for parking purposes for the service station; establish a larger frontage area for ingress to the service station; improve the lighting of the area, remodel the existing building, and establish a large modern service station canopy and a large modern pump island on the property; that these improvements would increase the business of the gasoline service station; that sixty to seventy per cent of the station's business comes from the neighborhood; that appellants would expect their business to increase after improvements and this increase in business would mean more vehicles going in and out of the service station and that the rental income from the station, presently $250 monthly, would increase after the proposed improvements to $450 monthly. Testimony of expert

witnesses was to the effect that the service station would benefit from the extra street width, from improved ingress and egress, and that a service station creates turbulence (an interference with the smooth flow of traffic) in the traffic upon the adjacent streets when vehicles move in and out of the station; that generally an individual piece of property will increase in value if adjacent streets are permanently improved to their ultimate width; that the service station is in a neighborhood in which the trend is toward multiple dwellings; and that a 15′ x 15′ cut-corner at the highway intersection is necessary for public safety and the efficient use of the streets.

The foregoing evidence clearly supports the trial court's finding that the conditions imposed pursuant to section 12.37 benefit the property in question by increasing accessibility thereto; by making it more productive by reason of the increase in its rental by $200 monthly; by making it more competitive and, in all probability, by increasing its value.

The increased traffic in and out of this service station would naturally tend to complicate traffic in the adjacent intersection and interfere with its smooth flow and increase its hazards unless appropriate corrective measures were taken. In this connection it will be recalled that petitioners were required to dedicate three feet on the Hillhurst side of the property. On that premise the court found: ''The addition of another 3 feet on Hillhurst at its intersection with Franklin Avenue would have a very beneficial effect. The city would be able to put in left-turn pocket lanes thus facilitating traffic movement at the intersection. The movement of traffic from land directly onto an abutting street has an effect upon the capacity of that street. It creates turbulence which is an interference with the smooth flow of traffic. The widening of the intersection of Hillhurst Avenue and Franklin Avenue would tend to facilitate the movement of traffic to and from petitioners gasoline service station.'' The court also found: ''The addition of another ten feet on Franklin Avenue would increase the capacity of the street and thereby facilitate the flow of vehicular traffic into and out of petitioners service station.''

Thus, it is apparent that the dedication of the 3-foot strip on Hillhurst and the 10-foot strip on Franklin bears a reasonable relation to the increased vehicular traffic that will be going into and out of this modernized and enlarged service station and to the interference which such additional cars will have on the smooth flow of traffic in this immediate vicinity and the traffic capacity of the two adjacent streets, and the

regulation of traffic in the adjacent intersection. These added traffic interruptions and complications reasonably justify the requested dedications in the interest of orderly and safe traffic regulation. There does not appear to be any challenge to the testimony that the 15' x 15' cut-corner was necessary in the interest of safety.

And, as previously noted, the court also found (Find. XXI), as a fact, that: ''The dedication required by respondents pursuant to and in accordance with the provisions of Section 12.37 would not cause any undue hardship or financial loss to petitioners.''

Appellants' contention that no additional traffic will be generated by the proposed improvement is true in the sense that ordinarily vehicular traffic will not come from distant points just to trade at this particular service station. But the point here is that additional traffic into and out of this station will result from this modernization, else the lessee could not afford to spend a substantial amount in making these improvements and almost double the rent too. And it is this ''in and out'' traffic that creates, or at least adds to, traffic complications in this immediate vicinity which justifies the city in requesting the dedications here in question so that it may take effective steps to prevent any traffic complications in this area as a result of appellants' improvement.

Appellants also argue that the proposed improvement does not change the present use of the property. This is true in the sense that the property still will be used as a gasoline service station. But that use will be substantially increased—and by the entrance and exit of a correspondingly increased number of automobiles from and into the stream of street traffic.

Finally, on this point, appellants argue that no additional burden is placed on the adjacent streets. This is contrary to the inference drawn by the trial judge. The evidence clearly justifies his interpretation.

It is appropriate here to point out that it is the appellants, not the city, who wish to put their property to an expanded use notwithstanding the complications in traffic flow and the interference in the use of the streets to their full capacity in the immediate vicinity by the additional in-and-out traffic at the station. If appellants desire the benefits resulting from the installation of the improvements in question they must meet any reasonable conditions imposed by the city before they can compel the city to issue the permit for such improvements. (See *Southern Pac. Co.* v. *City of Los Angeles, supra,* 242 Cal.App.2d 38, at p. 47.) In the circumstances here disclosed

we cannot say, as a matter of law, that the condition imposed by the city was not reasonable. And the fact the requested dedication and the improvement of the streets and intersection would "incidentally benefit the city as a whole is an irrelevant consideration." (*Southern Pac. Co.* v. *City of Los Angeles, supra,* at p. 51.)

■ Appellants argue that section 12.37 amounts to a "taking" of their property without compensation and therefore in violation of the constitutional prohibitions of this state, that said section denies appellants equal protection and due process guaranteed by both the state and federal Constitutions, and that therefore they are entitled, as a matter of right, to a building permit. In answer to these arguments we need only add, in addition to what we have already said, that to the extent that section 12.37 constitutes a proper exercise of the police power of the city then to that extent it is neither an exercise of the power of eminent domain nor a denial of due process or equal protection of the law.

It should be noted that the trial court had the opportunity of viewing appellants' property and was able to observe conditions at the service station, and at and upon the adjacent streets and at the intersection. ■ Conditions observed by the court are material evidence and "may be used alone or with other evidence to support the findings." (*South Santa Clara etc. Dist.* v. *Johnson,* 231 Cal.App.2d 388, 399 [41 Cal. Rptr. 846], and cases there cited.)

It is asserted that the value of the property requested to be dedicated is $5,000. It should be noted, however, that there was testimony that the value of property ordinarily will increase with permanent street improvements in the area, and it was incontrovertibly established that the improvements to be installed by appellants' lessee would result in a substantial increase in the rental income from the service station.

On this aspect of the case it appears clear that the trial court was justified in concluding that the application to appellants of section 12.37 bears a substantial relationship to the accomplishment of a proper public purpose within the police power, and in such application it is neither arbitrary nor unreasonable nor otherwise unlawful as to them.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 15, 1967. Peters, J., was of the opinion that the petition should be granted.