[Civ. No. 31207.   Second Dist., Div. Four.   May 22, 1968.]

THE PEOPLE EX REL. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v. INVESTORS DIVERSIFIED SERVICES, INC., Defendant and Respondent.

Harry S. Fenton, R. B. Pegram, Joseph A. Montoya, Richard L. Franck and Elbert E. Hensley for Plaintiff and Appellant.

Richards, Watson & Hemmerling and Gilbert Dreyfuss for Defendant and Respondent.

FILES, P. J.—This is an action in eminent domain brought by plaintiff to acquire a 10-foot-wide strip from the frontage of defendant's property 408.51 feet in length for the widening of Devonshire Street. There was a pretrial hearing at which the court was called upon to decide certain questions of law. At that hearing it was represented to the court that the property was zoned A1, but that the highest and best use of the property would be for residential purposes, which would require a change of zone; and that under Los Angeles Municipal Code sections 12.32 and 12.37, an applicant for a change of zone of this property might be required to dedicate a 20-foot strip for the widening of the street. Such a dedication would include the identical land condemned in this action. At the pretrial hearing plaintiff advised the court that it

expected to prove at the trial that the owner had made an application for a change of zone, and that other properties in the area which had obtained zone changes had been required to dedicate land for the widening of this street as a condition of the zone change; and that in the opinion of an appraiser a reasonable purchaser would take that into consideration if he were to purchase defendant's property.

The court then made an order which includes this:

"IT IS ORDERED, ADJUDGED AND DECREED, in valuing the defendant's property, the expert valuation witnesses may not consider the fact that, in order to put the property to its highest and best use by obtaining a zone change, defendant might be required to dedicate the identical parcel of land being condemned in this action, and may not value said parcel differently from the rest of the larger parcel on that account.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that if the expert valuation witnesses find that there is a reasonable probability of a change of zone, they shall value the parcel being taken in the same manner as the balance of defendant's property, at least to the extent of not allowing for any reduction in the value of the property taken on account of any possible required dedication."[1]

Following that order, on October 11, 1965, the parties entered into a written stipulation which declared that (1) had the matter been tried, plaintiff would have made an offer of proof that a qualified valuation witness would have valued the property at $100 but for the pretrial order above quoted, and (2) that giving effect to the pretrial ruling, the just compensation is $3,000. The stipulation concluded with the statement that the parties reserved the right to appeal from the judgment based upon that pretrial order. That stipulation was filed January 12, 1966.

On January 14, 1966, the parties filed a second stipulation which provided for the entry of a judgment, a copy of which was attached to that stipulation. The proposed judgment, attached to the January 14 stipulation, quotes in full the October 11, 1965, stipulation, and provides for compensation to defendant in the amount of $3,000. On January 17, 1966, there was entered a judgment in the exact form provided in the January 14 stipulation.

---

[1]This order is neither a judgment nor a decree. (See Code Civ. Proc., §§ 577, 1064.) The misuse of the words ''adjudged and decreed'' here is harmless, as no one has been misled by it.

Plaintiff is appealing from that judgment.

Despite the obfuscatory draftsmanship, whereby a stipulation is incorporated within a judgment within a stipulation, the January 14 document is not a consent to the judgment which was entered. It is clear that the parties did not mislead each other or the trial court. The effect of the stipulation was simply to admit that under the theory of valuation adopted by the trial court, the damages were $3,000. Plaintiff at all times contended in the trial court, as it does here, that the trial court made an error of law in adopting that theory. In stipulating, plaintiff simply acknowledged that no other contested issue remained undecided. The right to carry on the controversy in a reviewing court was preserved. Defendant does not contend otherwise. The sole issue argued in the briefs is whether the trial court erred in deciding that the appraiser could not consider the possibility that the defendant might be required to dedicate the property to the city.

The portions of the Los Angeles Municipal Code referred to in the pretrial proceedings are a part of the comprehensive zoning plan of the City of Los Angeles. Section 12.32 provides in part that in the consideration of an application for a change of zone, it may be required that provision be made for adequate streets. Section 12.37 provides in effect that, with certain exceptions, no building or structure may be erected on any lot in an R3 or less restricted zone, if such lot abuts on a major highway, unless the half of the highway located adjacent to such lot has been dedicated or improved to its master plan width. The section also prescribes procedures by which a variance from its requirements may be procured.

A dedication is not an inevitable result of a request for a change of zone or the issuance of a building permit, because the Municipal Code allows for an exercise of discretion by city authorities.

In some instances the practical effect of these provisions in the zoning laws is to compel a property owner to dedicate a portion of his property to the city without receiving the compensation which would be required if the property had been taken by a condemnation. The statutes and ordinances which bring this about have been held constitutional under the police power. (*Ayres* v. *City Council of Los Angeles,* 34 Cal. 2d 31 [207 P.2d 1, 11 A.L.R.2d 503] ; *Sommers* v. *City of Los Angeles,* 254 Cal.App.2d 605 [62 Cal.Rptr. 523] ; *Southern*

*Pac. Co.* v. *City of Los Angeles,* 242 Cal.App.2d 38 [51 Cal. Rptr. 197].) The latter two cases deal specifically with Los Angeles Municipal Code section 12.37.

In the *Sommers* case at page 613 the court said: "It should here be noted that the provisions of section 12.37 do not require the dedication or improvement of private property; they do under the police power sharply limit the use of private property adjacent to important city highways as part of the comprehensive zoning plan until such time as the development of the adjacent half of such highways is completed or reasonably assured, by whatever means. No doubt the practical effect of these provisions, in many instances, is to procure the dedication of the highway rights-of-way in order to gain the *immediate* right to use the remainder of the land to its maximum economic use. These dedications which are made under the police power pursuant to the provisions of section 12.37 are of course in sharp contrast to acquisitions under eminent domain where property is taken and paid for or purchased under threat of such proceedings."

In the case at bench the pretrial order contains some so-called "findings of fact" which include this statement:

"Dedication of defendant's property for the widening of Devonshire Boulevard [*sic*] to the width and standards set forth in the Los Angeles Municipal Code and in the Master Plan of Highways and Freeways, adopted by the City Planning Commission of the City of Los Angeles, would not favorably affect or benefit in any way the suitability of defendant's land for any residential uses, and would not be reasonably required by, or related to, planning or traffic needs resulting from the use of the property for residential purposes. Similarly, such dedication would not favorably affect or benefit in any way the suitability of any part of defendant's land for the construction of any residential building or improvement, and would not be reasonably required by, or related to, planning or traffic needs resulting from such construction."

There was nothing before the trial court to provide a basis for any such conclusion. The only evidence then before the court consisted of copies of the zoning ordinances. Plaintiff was offering to show that there was such a high probability of a dedication that in the appraiser's opinion a reasonable purchaser would take that into consideration. The expectation of

course is that the city authorities would act reasonably and within the limitations of the law.

In the case at bench the plaintiff is not seeking to force any dedication under the police power. This case involves a taking under the power of eminent domain, subject to the obligation on the part of the plaintiff to pay just compensation for what is taken (Cal. Const., art. I, § 14.) It must be noted that the issue brought here is a very narrow one. This court is not required to consider what is just compensation for the subject property, nor how that compensation is to be measured except in one respect, that is, whether the appraisers may consider at all the possible effect of sections 12.32 and 12.37 on the value of the property as of the date of valuation. It must be noted further that it is not for this court to consider whether the city would have compelled a dedication of the subject property (but for the plaintiff's taking) or whether the city could reasonably and lawfully have compelled it. The parties have bypassed any such issue by their stipulation that the plaintiff would have offered evidence concerning the probability of such a dedication, and the trial court's ruling that no such evidence could be considered.

In appraising the market value of a parcel of land, as a basis for measuring the constitutionally required ''just compensation,'' it is necessary to consider the existence of any zoning law which depresses value by limiting the use to which the property may be put. But if there is a reasonable probability that in the near future the zoning will change, then the effect of that probability upon the minds of purchasers generally may be taken into consideration. (*Long Beach City High School Dist.* v. *Stewart,* 30 Cal.2d 763, 768 [185 P.2d 585, 173 A.L.R. 249].)

The Los Angeles zoning ordinance may have a double effect upon plaintiff's acreage which fronts on Devonshire Street. If there is a reasonable probability that its zoning may be changed in the near future from agricultural to residential, the value of the tract as a whole may be enhanced thereby. But if the city will condition any such change upon a dedication of the first 20 feet along the highway, that 20-foot strip will never become residential property at all. To value that 20-foot strip as potential residential property would be contrary to the assumed facts, for under the hypothesis stated the 20-foot strip would not become available for residential use. It

was therefore error for the trial court to require the appraiser to consider the effect of a change of zoning upon the rear portion of the tract, and to assume, contrary to fact, that the effect upon the strip along the highway would be the same.

This decision is not inconsistent with Evidence Code section 822, which lists certain matters upon which opinions may not be based. One such forbidden matter is ''(e) The influence upon the value of the property or property interest being valued of any noncompensable items of value, damage, or injury.'' The matter here considered is not such an item. Here the matters considered are (a) the location of the property taken, and (b) the effect of the zoning ordinance. Those factors, considered together, may be found to minimize the probability that the subject property can ever be used for residential purposes.

The three arguments offered by defendant in support of the trial court's ruling must fail in the light of the foregoing analysis.

*First,* defendant argues that the provisions of the Los Angeles Municipal Code "have no application to this proceeding." That is literally true, but that code does govern the zoning of the defendant's property, which is a factor in appraising its value.

*Second,* defendant says that "restrictions on the use of property imposed by government authorities to depress the value of property preliminary to its acquisition for public purposes must be disregarded in any eminent domain proceeding." The case cited for that proposition is *Kissinger* v. *City of Los Angeles,* 161 Cal.App.2d 454 [327 P.2d 10], an action for declaratory relief. There the court held unconstitutional an emergency ordinance by which the city had attempted to rezone plaintiffs' property from R3 to the more restrictive R1 classification, for the purpose of depressing its value in anticipation of its condemnation for airport purposes. No such misuse of the police power appears in the record upon which the instant case is presented.

Defendant also cites *People* ex rel. *Dept. of Public Works* v. *Silveira,* 236 Cal.App.2d 604 [46 Cal.Rptr. 260]. In that case the highway department took a strip of defendants' ranch, along a highway, and also took defendants' right of access to the highway. Before the taking, defendants had the right of access to the highway at four specified points, where streets could have been built to serve a projected residential subdivi-

sion on the ranch. Defendants' valuation witnesses took into consideration the availability of this access. The plaintiff pointed out that Streets and Highways Code section 100.2 provides that no street shall be opened into a freeway unless the highway commission consents, and argued that since the commission retained that power the access was speculative and therefore not worth considering. The trial court instructed the jury that the defendants had a right of access at four openings, which could have been used in connection with any lawful use of the land. In affirming the judgment, the appellate court said (at p. 614): "we think that defendants could reasonably expect that any necessary consent of the California Highway Commission to the connection of a public road or street with the freeway at the particular opening would in all probability be obtainable and that considered in its totality, defendants' theory of valuation as to the uses to which the land might have been developed was reasonably probable and not entirely remote or speculative."

In effect, the appellate court refused to assume that plaintiff's property rights could have been destroyed by an arbitrary exercise of a regulatory power possessed by a governmental body.

The situation presented by the instant record does not include any assumption that the city's zoning power will be exercised arbitrarily, or even to defendant's detriment. Rather the probability indicated in the offer of proof is that the city would consent to a change of zoning which would greatly increase the value of defendant's total property, even though defendant might be required to dedicate the subject property at the same time.

*Third,* defendant argues that "The subject parcel could not have a value per square foot lower than the value of the remainder of the larger parcel since it was not lower in physical quality, and the dedication thereof was not physically necessary for the development of the larger parcel."

Defendant's emphasis on "physical quality" is erroneous. The subject property is different in value from the remainder of the acreage because of its location and because the existing zoning law affects it differently. The fundamental error in defendant's position is its insistence that the subject property should be valued as residential, in disregard of a zoning law which makes it highly improbable that this strip could ever become available for such use.

Defendant calls attention to two appellate decisions handed down subsequent to the judgment appealed from, but neither one furnishes any support for the ruling of the trial court. In *County of Santa Clara* v. *Curtner*, 245 Cal.App.2d 730 [54 Cal.Rptr. 257], the condemnation of a portion of plaintiff's property for highway purposes cut off part of the defendants' access, leaving defendants with a parcel which could not be developed to its highest and best use unless the defendants dedicated certain property for street widening in accordance with the city master plan of zoning. The court held it was error to include in the severance damages the cost of meeting the requirements of the city zoning plan. The opinion states (at p. 749) : "It is concluded, in the light of the principles set forth above, that condemnees were only entitled to severance damages from the county to the extent that the fair market value of their property was depreciated by the loss of access, and that insofar as the city's plan caused further depreciation of that market value the condemnees should be left to recover the excess from the city if and when the area within the plan lines is taken for public streets. Or if they elect to dedicate, and, if necessary, improve the streets in return for whatever advantages the city may offer toward the development of the property, they should not charge the county for the additional expense. Such a result would subsidize the property owner's additional advantages at the expense of the county."

The other case is *People* ex rel. *Dept. of Public Works* v. *Curtis*, 255 Cal.App.2d 378 [63 Cal.Rptr. 138], which also involves severance damages. The trial court refused to allow the appraisers or the jury to consider, as an element affecting severance damage, evidence that the city would probably require as a condition of any permit to develop the property the dedication of additional land necessary to widen the 40-foot strip being taken by the state to a width of 80 feet. In affirming, the appellate court said (at p. 384) : "If the city of West Covina should decide to compel dedication for the purpose of widening Center Street, appellants' property will not be thereby taken or damaged within the purview of the constitutional rule requiring payment of compensation. To the extent that the widening of Center Street is required by the proposed development of the property, the property will be benefited thereby and not damaged. To the extent that the widening is made necessary by present and future traffic conditions in the neighborhood, any damage caused thereby is

noncompensable because it results from a risk shared by all property owners.''

The cases which have upheld the constitutionality of the Los Angeles zoning ordinance recognize that forced dedication is a concomitant to the development of a larger parcel, ordinarily resulting in a net economic gain to the owner and an increased traffic burden on the neighborhood, for which the owner should pay something. Thus placing a property owner in a position in which he may be required to make such a dedication at some future time should not be expected to reduce the value of his property as a whole. The *Curtis* and *Curtner* decisions' realistic view of the effect of zoning requirements upon undeveloped property are not authority for defendant's argument that such laws are irrelevant to appraisals made for eminent domain proceedings.

The property owners in *Curtis* and *Curtner* wanted the court to look only at the burdens and disregard the economic benefits of the prospective development of their properties. The property owner here wants the court to value its property as though the benefits of a zone change could be had without the burdens. Here again the total effect of the local zoning laws must be considered. If an appraiser finds that by reason of such a law the land probably will never be available for residential use, he should take that into consideration in forming his opinion of value.

The judgment is reversed.

Jefferson, J., concurred.

BISHOP, J. pro tem.*—I dissent. ''It is, of course, an elementary rule of appellate procedure that a judgment or order will not be disturbed on an appeal prosecuted by a party who consented to it.'' So stated the Court of Appeal in *Atchison, T. & S.F. Ry. Co.* v. *Hildebrand* (1965) 238 Cal. App.2d 859, 861 [48 Cal.Rptr. 339, 341], as it dismissed the appeal citing six of the many cases that it could have selected, beginning as far back as *Imley* v. *Beard* (1856) 6 Cal. 666. So far as I am aware, given the premise ''who consented to it,'' no exception has been made in a ''hard case.''

It seems clear to me that our appealing plaintiff ''consented'' to the judgment from which it appealed. The judgment's opening words were: ''It appearing to the Court that

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

plaintiff above-named and defendant Investors Diversified Services, Inc., a corporation, . . . have stipulated to judgment in condemnation herein between said parties with respect to the real property . . . and other than the Findings of Fact and Conclusions of Law dated July 1, 1965, on file herein, have waived further Findings of Fact, Conclusions of Law. . . ."

There were two stipulations in the files at the time the judgment was entered. Whatever the effect of the first stipulation, the second cannot be misunderstood. It was executed January 6, 1966, and provides, without uncertainty or equivocation, "that judgment in Condemnation . . . may be entered in the sum and containing the terms and conditions of the attached proposed judgment, marked 'Exhibit A' and by this reference made a part of this stipulation. . . ." The judgment entered January 17, 1966, from which plaintiff's appeal was taken, is word for word, Exhibit A, which the plaintiff, by the same counsel that executed his notice of appeal, had consented the judgment was to be. The January 6 stipulation was somewhat lengthy, but it contained no weasel words, nothing that can be construed as a condition upon the consent given that Exhibit A may be the judgment. It became the judgment. Plaintiff may not appeal from it. I would dismiss its appeal.

A petition for a rehearing was denied June 19, 1968, and respondent's petition for a hearing by the Supreme Court was denied July 17, 1968.