[Civ. No. 11856. Third Dist. Aug. 4, 1969.]

BESSIE C. SCRUTTON, Plaintiff and Appellant, v. COUNTY OF SACRAMENTO, Defendant and Respondent.

414

Bradford, Cross, Dahl & Hefner, Dahl, Hefner, Stark & Marois and John D. Bessey for Plaintiff and Appellant.

John B. Heinrich, County Counsel, and Thomas A. Darling, Deputy County Counsel, for Defendant and Respondent.

FRIEDMAN, Acting P. J.—Mrs. Bessie Scrutton, the plaintiff, brought a declaratory relief action against the County of Sacramento and appeals from a summary judgment favoring the county.

Mrs. Scrutton owns a parcel of land in suburban Sacramento County. Its 350-foot north boundary fronts on Whitney Avenue, an east-west arterial boulevard. Its 650-foot eastern

edge borders a partially improved street called Foster Way. In May 1964 Mrs. Scrutton filed an application with the county planning commission seeking to have the property rezoned from agricultural to multiple family residential to permit its development for residential apartment units.

The planning commission recommended that the application be approved subject to conditions. Section 23(H) of the county's basic zoning ordinance provides: "The Board of Supervisors may impose conditions to the zoning reclassification of property where it finds that said conditions must be imposed so as not to create problems inimical to the public health, safety and general welfare of the County of Sacramento."

Among the requirements proposed by the planning commission were that Mrs. Scrutton dedicate a 10-foot right of way for widening Whitney Avenue and improve it with pavement, sidewalk, curbs and gutters; that on the east edge of her property she dedicate a 27-foot strip to form the west half of Foster Way; that she join an assessment district which would improve the west half of Foster Way with paving, sidewalk, curbs and gutters.

The board of supervisors then held a hearing to consider the application. The board expressed agreement with the conditions recommended by the planning commission, except that it imposed the additional requirement that Mrs. Scrutton pave Foster Way at her own expense instead of financing the work through a neighborhood assessment district. Before adopting the rezoning ordinance sought by Mrs. Scrutton, the board of supervisors tendered a deed and contract for her signature. According to the board's usual procedures, it would not formally adopt the rezoning ordinance until the applicant returned the executed deed and contract. Under the contract proferred Mrs. Scrutton, she would commit herself to comply with all the conditions imposed by the county, and any failure on her part would cause the property's reversion to agricultural zoning.

Mrs. Scrutton had no objection to the county's requirement for dedication and improvement of the Whitney Avenue frontage. Although she had originally been willing to go along with the demand for dedicating a 27-foot strip along Foster Way, she objected to the supervisors' demand that she pave the latter at her own expense (amounting to about $13,000). She refused to sign the proposed contract, then filed this delcaratory relief action to test the validity of the super-

visors' demands for dedicating the Foster Way frontage and paving it at her own expense.

Mrs. Scrutton's complaint alleges that Whitney Avenue on the north will provide the sole vehicular access to her planned apartment development; that she does not plan on access to and from Foster Way; that the property across the street on Foster Way is owned by a school district which has dedicated and paved a 27-foot longitudinal strip forming the eastern half of Foster Way; that her action in dedicating and paving a 27-foot strip as the western half of Foster Way will not benefit her own property or her proposed apartment development. Her complaint also pointed to two development-ripe parcels owned by others to the south of her property, which were without northward access to Whitney Avenue but would, if the county's demands are met, be supplied with such access.

Although somewhat indirectly, Mrs. Scrutton's complaint charges that the Foster Way improvement project is unreasonably aimed at accommodating public needs unconnected with her own apartment development. The county filed an answer denying her claim of lack of benefit from the Foster Way widening project. The county's answer extolled the Foster Way project as a benefit to Mrs. Scrutton's property, but was silent as to the project's utility for public uses unrelated to her apartments. The county moved for a summary judgment, supporting its motion by affidavits averring that the Foster Way project would provide on-street parking for Mrs. Scrutton's tenants and assist in fire protection. Like the county's answer, its affidavits were reticent on the project's utility for unrelated public services, conceding that "this benefit inures to all property generally, including the Plaintiff's property." The trial court granted the summary judgment motion. Its judgment upholds the validity of section 23(H) of the county ordinance and declares its validity as applied to the facts. Mrs. Scrutton's appeal attacks both these conclusions.

Chapter 4 of title 7 of the Government Code (§§ 65800-65907) establishes standards for the adoption and administration of zoning regulations by counties and nonchartered cities. Among such standards is that of uniformity within land use zones. "All such regulations shall be uniform for each class or kind of building or use of land throughout each zone . . . ." (Gov. Code, § 65852.) Another provision of the state law recognizes that variances may be granted subject to individu-

alized conditions. (Gov. Code, § 65906.) There is no statute specifically authorizing the imposition of conditions upon rezoning individual parcels.

■ "Conditional zoning" is an appropriate phrase to describe a zoning change which permits use of a particular property subject to conditions not generally applicable to land similarly zoned. (1 Anderson, American Law of Zoning (1968) § 8.20, pp. 610-614.) ■ Plaintiff contends that the conditional rezoning attempted here exceeds Sacramento County's authority under state law and violates that law's uniformity demand.

■ County zoning regulations are a manifestation of the local police power conferred by article XI, section 11, of the state Constitution, not an exercise of authority delegated by statute. (*People* v. *Johnson*, 129 Cal.App.2d 1, 5-6 [277 P.2d 45]; see *Miller* v. *Board of Public Works*, 195 Cal. 477, 483 [234 P. 381, 38 A.L.R. 1479].)[1] In their intrinsic character and by express declaration the state laws on county and city zoning are designed as standardizing limitations over local zoning practices, not as specific grants of authority to legislate.[2] The state statutes' silence on conditional rezoning is not a denial of power to pursue that practice. The practice must find its own justification as an appropriate exercise of the local police power.[3]

■ So-called "Euclidean" zoning divides the community into homogeneous land use zones. Individual parcels

[1]Article XI, section 11, of the California Constitution: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

[2]Government Code, section 65800, declares: "It is the purpose of this chapter to provide for the adoption and administration of zoning laws, ordinances, rules and regulations by counties and cities, as well as to implement such general plan as may be in effect in any such county or city. The Legislature declares that in enacting this chapter it is its intention to provide only a minimum of limitation in order that counties and cities may exercise the maximum degree of control over local zoning matters."

[3]Plaintiff cites *Richter* v. *Board of Supervisors*, 259 Cal.App.2d 99 [66 Cal.Rptr. 52], as authority for the proposition that conditional zoning is impermissible in the absence of specific authorization in state law. *Richter* does not so hold. There the court dealt primarily with the procedural distinctions between rezoning and zoning variances. It decided, quite properly, that the state law requires rezoning of individual parcels to be accomplished by an ordinance, this state-prescribed mode of action being binding on the county. Notwithstanding a dictum speaking of "authority derived from a statute" (259 Cal.App.2d at p. 105), *Richter* does not hold that county zoning regulations are substantively limited to the specific delegations expressed by state law.

may often be allowed a justified escape from this rigid grouping without detriment to zoning objectives. Rezoning an individual parcel is simply one of a variety of techniques for achieving flexibility in land use. (See 1 Anderson, *op. cit.,* § 8.17, pp. 604-608.) California elucidations of the local police power recognize that other kinds of application for change in regulated land use may be granted subject to the landowner's compliance with reasonable conditions. The power to impose such conditions has been upheld in connection with the approval of subdivisions (*Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31, 41-42 [207 P.2d 1, 11 A.L.R.2d 503] ; *City of Buena Park* v. *Boyar,* 186 Cal.App.2d 61, 66-67 [8 Cal. Rptr. 674]) ; with the grant of building permits (*Southern Pac. Co.* v. *City of Los Angeles,* 242 Cal.App.2d 38, 45-48 [51 Cal.Rptr. 197] ; *Sommers* v. *City of Los Angeles,* 254 Cal.App. 2d 605, 610 [62 Cal.Rptr. 523]), and with the grant of zoning variances (*Bringle* v. *Board of Supervisors,* 54 Cal.2d 86, 88-89 [4 Cal.Rptr. 493, 351 P.2d 765] ; see comment, 20 Hastings L.J. 735). The power to impose conditions on rezoning furthers the well-being of landowners generally, promotes community development and serves the general welfare.

Like other changes in land use, the rezoning of an individual parcel may benefit the landowner but generate augmented demands for public services or create deleterious effects in the neighborhood. Reasonably conceived conditions harmonize the landowner's need with the public's interest. In New York, the authority to reclassify subject to reasonable conditions has been upheld as a manifestation of the general authority to reclassify without conditions. (*Church* v. *Town of Islip* (1960) 8 N.Y.2d 254, 203 N.Y.S.2d 866 [168 N.E.2d 680, 683].) The same police power which supports the imposition of reasonable conditions upon other kinds of change in land use sustains the power of California counties to engage in "conditional rezoning."

Government Code section 65852, *supra,* aims at the general objective of uniform land use within each land zone. Conceivably, a condition evolved under section 23(H) of the county ordinance might illegally broaden or narrow permissible land uses in violation of the state law's uniformity standard. (See 1 Anderson, *op. cit.,* § 5.17, pp. 287-291.) Alternatively, section 23(H) may be utilized to impose conditions in no way affecting the property's availability for uses identical with those of other property in the same zoning classification. Conditional zoning which does not affect the property's use does not violate the uniformity objective. The latter alter-

native characterizes the present case. The conditions imposed by the county would not prevent Mrs. Scrutton from using her property for all purposes within the multiple residential classification. We conclude that section 23(H) is a valid expression of Sacramento County's zoning power.

■ Quite aside from the validity of section 23(H), plaintiff attacks the county's action as "contract zoning" by which the county, in exchange for the landowner's covenants, would bargain away a portion of its future power over zoning. ■ The police power to zone and rezone may not be restricted by contract. (*Acker* v. *Baldwin*, 18 Cal.2d 341, 345 [115 P.2d 455]; *Griffin* v. *County of Marin*, 157 Cal. App.2d 507, 514-515 [321 P.2d 148].) ■ The phrase "contract zoning" has no legal significance and simply refers to a reclassification of land use in which the landowner agrees to perform conditions not imposed on other land in the same classification. No reported California decision deals with it. It has been criticized and defended, nullified in some states, sustained in others. (See, e.g., *Baylis* v. *City of Baltimore* (1959) 219 Md. 164 [148 A.2d 429]; *Sylvania Elec. Products, Inc.* v. *City of Newton* (1962) 344 Mass. 428 [183 N.E.2d 118]; *Bucholz* v. *City of Omaha* (1963) 174 Neb. 862 [120 N.W.2d 270]; *Church* v. *Town of Islip, supra*; see generally, 1 Anderson, *op.cit.*, § 8.21, pp. 616-620; 67 Dick.L.Rev. 109; 3 Gonzaga L.Rev. 197; 23 Md.L.Rev. 121; 12 Syracuse L.Rev. 230; 41 Temple L.Q. 267; 12 U.C.L.A. L.Rev. 897.)

■ All contracts are made with reference to possible exercises of the police power and with the possibility of its exercise as an implied term. (*Mott* v. *Cline*, 200 Cal. 434, 446 [253 P. 718]; *Castleman* v. *Scudder*, 81 Cal.App.2d 737, 740 [185 P.2d 35].) Here the county itself does not become party to an express contract. Yet, when the zoning agency exacts a concomitant contract from the landowner, it holds out an implied or moral assurance that it will not quickly reverse or alter its decision. In a sense this assurance tends to freeze the property's status. The suspension of continuing police power is theoretical rather than real. "[W]e deal here with actualities, not phrases." (*Church* v. *Town of Islip, supra*, 168 N.E.2d at p. 683.) Approval of the landowner's application in the first instance represented "spot zoning" of an individual parcel. ■ That kind of zoning is valid when long-term changes in the neighborhood have created conditions compatible with the proposed new use. (*Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 340 [175 P.2d 542]; *Skalko* v. *City*

*of Sunnyvale,* 14 Cal.2d 213, 216 [93 P.2d 93] ; 1 Anderson, *op. cit.,* § 5.06, pp. 248-252.) The very basis for the action—neighborhood change—provides the reclassification with a practical assurance of stability. The investment made on the strength of rezoning has precisely the same protection against later arbitrary action as any other property investment. A zoning ordinance may not immediately suppress or force removal of an otherwise lawful business or use. (*City of Los Angeles* v. *Gage,* 127 Cal.App.2d 442, 454 [274 P.2d 34].) All are shielded from arbitrariness and all are vulnerable to reasonable exercises of the police power. (*Hamer* v. *Town of Ross,* 59 Cal.2d 776, 781-783 [31 Cal.Rptr. 335, 382 P.2d 375] ; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990].) The contract zoning procedure pursued here entails neither a formal nor a practical surrender of the police power.

 Plaintiff has a valid objection to the reversion feature of the proposed rezoning. In effect, the proposed contract declares that the landowner's breach of covenant will be met by automatic reversion from the multiple residential to the original agricultural classification or by reversion through action of the board of supervisors. The reversion would amount to a second rezoning. Automatic reversion would violate the procedural directions of state law, which demand that rezoning be accomplished through notice, hearings and planning commission inquiry. (Gov. Code, §§ 65853-65857; *Richter* v. *Board of Supervisors, supra,* 259 Cal.App.2d at p. 105; *Hein* v. *City of Daly City,* 165 Cal.App.2d 401, 405-406 [332 P.2d 120].)

Even if procedural directions were followed, the reversion would violate substantive limitations upon the supervisors' legislative power. The board has power to rezone an individual parcel when changed community conditions have rendered the former classification unsuitable and the new one is consistent with the public interest. (*McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 885, 892 [264 P.2d 932] ; *Skalko* v. *City of Sunnyvale, supra,* 14 Cal.2d at p. 216; *Reynolds* v. *Barrett,* 12 Cal.2d 244, 251 [83 P.2d 29] ; 13 Hastings L.J. 390-394.) Although the courts do not ordinarily inquire into legislative motivation, the proceedings on their face would characterize the reversion ordinance as a forfeiture rather than a legislative decision on land use. (Cf. *Kissinger* v. *City of Los Angeles,* 161 Cal.App.2d 454, 460-462 [327 P.2d 10].) An ordinance so conceived is not a valid exercise of zoning power.

The county, nevertheless, has alternative remedies. Other

enforcement devices are possible and judicial remedies available, based upon such theories as breach of contract, breach of restrictive covenant and breach of equitable servitude. (See 12 U.C.L.A. L.Rev., *supra*, at pp. 907-912.) ▌ Lastly the inquiry focuses on validity of the specific demands attacked by Mrs. Scrutton's suit—that she dedicate a 27 by 650-foot strip as the western half of Foster Way and install pavement, gutter, curb and sidewalk at her own expense.

▌ As noted earlier, the police power permits the imposition of reasonable conditions upon the landowner's proposal. Not all conditions are valid. A grant of public privilege may not be conditioned upon the deprivation of constitutional protections. (*Bagley* v. *Washington Township Hospital Dist.*, 65 Cal.2d 499, 504-505 [55 Cal.Rptr. 401, 421 P.2d 409]; *Danskin* v. *San Diego Unified School Dist.*, 28 Cal.2d 536, 545-547 [171 P.2d 885].) ▌ The police power "cannot extend beyond the necessities of the case and be made a cloak to destroy constitutional rights as to the inviolateness of private property." (*House* v. *Los Angeles County Flood Control Dist.*, 25 Cal.2d 384, 388-389 [153 P.2d 950].) ▌ An arbitrarily conceived exaction will be nullified as a disguised attempt to take private property for public use without resort to eminent domain or as a mask for discriminatory taxation. (*Mid-Way Cabinet etc. Mfg.* v. *County of San Joaquin*, 257 Cal.App.2d 181, 192 [65 Cal.Rptr. 37]; *Kelber* v. *City of Upland*, 155 Cal.App.2d 631, 638 [318 P.2d 561]; see generally, 12 Syracuse L.Rev. at pp. 233-238.)

Although "reasonableness" has been postulated as the hallmark of validity, a more precise standard is available. An utterance in *Ayres* v. *City Council of Los Angeles, supra*, 34 Cal.2d at page 42 supplies it: "[W]here it is a condition reasonably related to increased traffic and other needs of the proposed [land use] it is voluntary in theory and not contrary to constitutional concepts." ▌ The *Ayres'* formulation may be generalized by the statement that conditions imposed on the grant of land use applications are valid if reasonably conceived to fulfill public needs emanating from the landowner's proposed use.

The California decisions illustrate two kinds of need: the community's protection against potentially deleterious effects of the landowner's proposal (e.g., *Ayres* v. *City Council of Los Angeles, supra*, 34 Cal.2d at pp. 38-39) and the community's need for facilities to meet public service demands created by the proposal (e.g., *Bringle* v. *Board of Supervisors,*

*supra,* 54 Cal.2d at p. 89; *Sommers* v. *City of Los Angeles, supra,* 254 Cal.App.2d at p. 619; *Southern Pac. Co.* v. *City of Los Angeles, supra,* 242 Cal.App.2d at pp. 45-46; *City of Buena Park* v. *Boyar, supra,* 186 Cal.App. at p. 66.) While decisions invalidating the exaction rely upon theories of constitutional invasion, their springboard is the lack of relationship between the exaction and the proposed use (e.g., *Mid-Way Cabinet etc. Mfg.* v. *County of San Joaquin, supra,* 257 Cal.App.2d 181; *Kelber* v. *City of Upland, supra,* 155 Cal. App.2d 631.)

 The relationship between the condition exacted by the public authority and the use proposed by the landowner presents a factual inquiry for the trial court. In order to show a lack of relationship, the landowner must present evidence. (*Bringle* v. *Board of Supervisors, supra,* 54 Cal.2d at p. 89.) The court can seldom if ever resolve this inquiry without taking evidence. Mrs. Scrutton's claim of arbitrary imposition required that kind of inquiry by the trial court.

The county's supporting affidavits, on the other hand, fell short of the target. In essence they sought to demonstrate that the landowner's dedication of a 27 by 650-foot strip and her expenditure for paving it would benefit her proposed apartments. They contained no showing that Mrs. Scrutton's apartment project would generate traffic or other conditions on Foster Way which would reasonably necessitate widening and improving the street at her sole expense.

It is true that some of the courts have justified the exaction not only for its fulfillment of public needs caused by the proposed development, but also because it would benefit the landowner financially. (See discussion 52 Cornell L.Q. 871, 890-903; 20 Hastings L.J., *supra,* at pp. 740-743.) Standing alone, the landowner's economic benefit supplies inadequate underpinning for the exaction. The police power forms the exaction's constitutional foundation. That power is aimed at public need, not private profit. The landowner should be free to reject the paternalism which forces him into an exaction conceived for his personal benefit. The decisions seem to utilize the "private benefit" notion as judicial gloss after the prime essential, a public burden emanating from the development, has been discerned. (See, e.g., *Ayres* v. *City Council of Los Angeles, supra,* 34 Cal.2d at p. 41; *Southern Pac. Co.* v. *City of Los Angeles, supra,* 242 Cal.App.2d at p. 49.) The fulfillment of public needs emanating from the proposed land use is the *sina qua non* of the exaction's reasonableness.

The county's affidavits did not entitle it to judgment in the action and the trial court thus erred in granting the summary judgment motion. (Code Civ. Proc., § 437c.)

The judgment is reversed and the cause remanded to the trial court for proceedings compatible with the views expressed in this opinion.

Regan, J., and Janes, J., concurred.