29 So.2d 342

**JOHNSON v. CITY OF HUNTSVILLE.**
8 Div. 359.

Supreme Court of Alabama.
March 6, 1947.

Arthur D. Shores, of Birmingham, for appellant.

W. J. Price, of Huntsville, for appellee.

BROWN, Justice.

This appeal is by the complainant from a final decree of the circuit court, in equity, dismissing his bill filed against the City of Huntsville, a municipal corporation, to restrain and enjoin the defendant from enforcing Ordinance No. 66–E, adopted and approved on the 22nd of November, 1945, zoning a segment in the City of Huntsville. theretofore unzoned, and within the following boundaries:

"All that part of the City of Huntsville, Madison County, Alabama, embraced within the following boundaries, viz: Beginning at a point on the north margin of Half Street, said point being the southeast corner of Lot three (3) Block two hundred and thirteen (213) according to Quigley's Map of the City of Huntsville; thence North 56-½ degrees east along the north margin of Half Street 281 feet to a point on the east margin of Franklin Street, said point being located on the west boundary of Lot Five (5) Block two hundred eight (208) according to the Jones Map of the City of Huntsville, thence south 33-½ degrees east along the east margin of Franklin Street 230 feet to the intersection of the east margin of Franklin Street and the North margin of Townsend Street, thence North 56-½ degrees east along the North margin of Townsend Street with the east margin of South Greene Street; thence South 33-½ degrees east 510 feet to a point at the city limits of the City of Huntsville, said point being the southwest corner of lot twenty-six (26) of the Cramer Addition to the City of Huntsville, according to Quigley's map of the City of Huntsville, thence along the city limits of the City of Huntsville, south 56-½ degrees west 870 feet to a point on the south boundary of the city limits 150 feet eastwardly from the intersection of Madison Street with the South boundary

of the city limits; thence Northwardly 150 feet east from Madison Street and parallel with same 850 feet to the place of beginning, said area being now designated as a residential area."

The above zoning ordinance embraced a part of two blocks situated between South Greene Street and Madison Street with Franklin Street running practically through the center of the zone, leaving free and unzoned a part of the territory abutting the easterly side of Madison Street.

The evidence illustrating the facts upon which complainant rests his right to relief is without dispute. The complainant is a resident of the City of Huntsville. At the time of the passage of said ordinance and prior thereto, complainant owned a vacant lot which he purchased on July 18, 1945, and received a deed therefor, situated on the southeast corner of Townsend and Franklin Streets in the City of Huntsville. He also had procured, what the evidence shows by a practice of many years in respect to such matters, a building permit from the clerk of the City of Huntsville, Alabama, and had paid therefor the sum of $15. He had employed a contractor and had begun excavation for a building for use as a drycleaning plant and laundry; had procured necessary equipment and incurred other expenses running into several thousand dollars, when the city council took up consideration of the passage of said ordinance on the petition of white residents and property owners along Franklin Street in the white district. The property of the complainant was and is located in a district "across the creek" from residences occupied by white residents, petitioning for the passage of the ordinance, and is occupied exclusively by negroes. One of the white petitioners against the building operations owns property in said area. Complainant presented to the council a petition signed by the negro residents protesting against preventing the complainant from proceeding with his building by incorporating his property in the residence zone.

The evidence further shows that on Madison Street equidistant from the objecting residence owners, the White Swan Laundry and Cleaning Plant is located and operated,

the same being located a block immmediately west of complainant's property. The evidence further shows that a "gentleman" offered to reimburse the complainant for his lot, as we construe the evidence, offering to purchase his lot for the amount complainant paid therefor, not including expenses incurred in cleaning off the lot and in preparing for the construction of the

building, which complainant refused to accept.

It is further shown without dispute, in fact admitted by the defendant's answer, that the City Code of Huntsville adopted in 1941 by the respondent municipal corporation, only embodied an ordinance defining "a residence district" in which "no store, plant, building, structure, improvement or place of business or industrial projects shall be erected, established or maintained," except on certain properties in said defined area, expressly excepted from the ban of the ordinance.

Section 4 of Chapter 22 of the City Code prohibited junk yards, bone yards, etc., in a defined area, unless conducted within "a suitable building." The area outside those specifically defined and described was not embodied in a zone by ordinance or by-law, but the city code embodied building restrictions and fire prevention regulations. Ordinance 66–E, the enforcement of which the bill seeks to enjoin, merely added a small segment to the previously described residential district.

The defendant offered evidence going to show that prior to the passage of the ordinance embodied in Chapter 22, Section 1 of the Code of Ordinances, the city caused to be made by a competent civil engineer maps of the City of Huntsville, showing the location of different business institutions and buildings and location of residences in the thickly populated districts and the mayor and city council after much consideration of the needs and wants of the City of Huntsville adopted said ordinance, constituting Section 1 of Title 22 of the Code of Ordinances of the City of Huntsville, but passed no other zoning ordinance, leaving all the remaining portions of the city without restriction or regulation, except as hereinbefore stated. No one of the said maps

were adopted and made a part of an ordinance defining zones.

The contention of appellant is that the acts of the governing body of the City of Huntsville show an absence of a comprehensive zoning ordinance as authorized by § 772, Title 37, Code of 1940, and that said Ordinance 66–E violates constitutional due process and denies complainant equal protection of the law.

The contention of appellee on the other hand, to state it in the language of the brief, is: " * * * In the case at bar, the Appellee took into consideration the entire City of Huntsville, and according to the testimony of one of the Councilmen, almost a year was consumed in the study of the needs and the conditions that existed. The City Engineer states that at least 30 conferences were held. The Engineer first platted the entire City with a plat showing where all businesses and industries were located within the corporate limits, which clearly shows that a thorough and comprehensive study was made before a general zoning ordinance was finally adopted for the City of Huntsville, and was based upon the knowledge acquired by the City Council of the conditions as they existed, and from an exhaustive study by them, and such ordinance after being adopted became Chapter 22 of the City Code of Huntsville, * * *." This ordinance, not only created residential zones as set out in Section One of said chapter, but included building restrictions and said ordinance also restricted certain areas against their use as junk-yards, bone-yards, scrap-yards and the business of demolished and wrecked automobiles. * * *."

Section 772, supra, originated in the General Acts of 1923 and appeared in the Code of 1923 as § 1878. Code of 1923, Vol. 1, § 1878; Acts of 1923, p. 590. Said section provides:

"772. (1878) Business, industrial, or residential zones authorized.—Each municipal corporation in the State of Alabama may divide the territory within its corporate limits into business, industrial, and residential zones or districts and may provide the kind, character and use of structures and improvements that may be erected or made within the several zones or districts established and may, from time to time, rearrange or alter the boundaries of such zones or districts and may also adopt such ordinances as necessary to carry into effect and make effective the provisions of this article."

■ Bassett in his work on "Zoning" observes: "No municipality is compelled by law to enter into zoning. The state enabling acts are permissive only. But if a municipality decides to zone it must follow the procedure given in the state act; otherwise its ordinance will be null and void. * * *." Page 31. "A zoning ordinance covers a single political subdivision—a city, village, borough, town or county. Inasmuch as lands situated alike should be zoned alike, the zoning map ought to cover the whole of the political subdivision. * * *." P. 48.

■ This section was considered in the decision of Chapman v. City of Troy, 241 Ala. 637, 4 So.2d 1, and is cited in briefs of both parties, wherein the court pronounced void an ordinance passed by the City Council of Troy creating and establishing a zone for residential purposes only, defining the boundaries of such district. Appellant insists that this decision is applicable to and governs the case presented on this record. There can be no escape from the conclusion that § 772 of Title 37, Code of 1940, as was its predecessor, is a delegation *in part* of the police power of the state to be exercised within the limits prescribed by the statute and the state and federal constitutions protecting property rights, for the promotion of the public good and general welfare. Arverne Bay Construction Co. v. Thatcher, Com'r of Buildings, et al., 278 N. Y. 222, 15 N.E.2d 587, 117 A.L.R. 1110, and see annotations on page 1130 et seq. The quoted statute clearly contemplates such zoning ordinance should include the whole municipality in a "comprehensive plan." Bassett on Zoning, p. 48. Spot zoning and zoning by piecemeal is not authorized. This is the effect of the decision in Chapman's case. The restriction on property rights in the several zones must be declared as a rule of law in the ordinance and not left to the uncertainty of proof by extrinsic evidence, parol or written. Western Theological Seminary v. Evanston, 325 Ill. 511, 156 N.E.

40

778; Phipps v. Chicago, 339 Ill. 315, 171 N.E. 289. Nor can the exercise of property rights be left to the caprice, whim or aesthetic sense of a special group of individuals who may object to the use by a property owner of the rights fixed by such ordinance or left unrestricted thereby. Pentecostal Holiness Church of Montgomery v. Dunn et al., 248 Ala. 314, 27 So.2d 561. This concept is given emphasis by §§ 776 and 777 of said title, which provide:

"776. Number, shape and area of districts; uniformity of regulations.—For any or all of said purposes the local legislative body may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this article, and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in any one district may differ from those in other districts."

"777. Purpose of regulations.—Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets, to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provisions of transportation, water, sewage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district, and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

As heretofore stated, the only zone established within the corporate limits of the City of Huntsville was the residential zone. This case is governed by the decision in Chapman v. City of Troy, supra.

The decree of the circuit court is, therefore, reversed and one here rendered granting complainant relief as prayed in his bill, perpetually enjoining the enforcement of said ordinance 66–E which we here and now declare void.

Reversed and rendered.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.