81 So.2d 535

**SHELL OIL COMPANY et al.**

v.

**A. D. EDWARDS et al. (and cross appeal).**

**6 Div. 620.**

Supreme Court of Alabama.

June 16, 1955.

White, Bradley, Arant, All & Rose, Douglas Arant and Alex S. Lacy, Birmingham, for appellants.

Chas. H. Brown, Birmingham, for cross-appellee City of Birmingham.

Wm. Soroka, Ingram Beasley, Birmingham, and E. C. Yokley, Nashville, Tenn., for appellees.

PER CURIAM.

The main appeal in this case is by the respondents, to whom we will sometimes refer as Jackson and associates, from a final decree in equity wherein they were "enjoined from locating a filling station in Block 5, Crestwood Addition Woodlawn Highlands, First Sector, except on the southwest corner fronting one hundred and fifty (150) feet on Crestwood Boulevard and extending south one hundred and twenty-five (125) feet". Complainants have cross appealed and are A. D. Edwards and wife, who purchased a house and lot immediately east of said Block 5 in November 1952, together with twelve intervenors who likewise have purchased homes in the subdivision.

The facts developed by the pleading and evidence, briefly stated, are: Jackson and associates acquired in 1943 a. large tract (205 acres) of undeveloped woodland south of the Woodlawn section of the City of Birmingham. They intended to convert this property into a very high class resi-

dential district when an appropriate time arose. In 1946 a subdivision map was completed for them by an engineer retained for that purpose. This map was filed for record in the probate office on June 18, 1946. It contained a diagram of residence lots, streets, etc., usual in such matters. The State had acquired a right of way for a four lane super-highway with dividing parkway, which extended through the southern portion of the area thus surveyed and designated. The map indicated the location of the highway which is sometimes referred to as Crestwood Boulevard. The area surveyed was designated "Crestwood Addition to the Survey of Woodlawn Highlands". The super-highway has been constructed and is the location of highway or road No. 78 extending from Birmingham to Atlanta. In a general way it extends from the west eastwardly and separates the lots as divided by the survey. The area was wholly undeveloped. Block No. 5, here considered, adjoins the highway on the north according to the map, and is west of 56th Street, which connects traffic from First Avenue, North, at Woodlawn with the highway. Block No. 5 was therefore in the northwest corner of the intersection of 56th Street, South, and the super-highway. The subdivision plan and map showed the northern portion of Block No. 5 to be divided so as to contain three residential lots. The remainder of the block was labeled on the map *"Reserved for Crestwood Business Section"*. That area, as marked, was about two acres of 436 feet wide as it abutted the super-highway, and 317 feet wide south of the residence lots 1, 2 and 3, and extended north from the super-highway 429 feet.

The subdivision plan was approved by the City Commission of Birmingham on June 18, 1946, when Jackson and associates began clearing the property and constructing streets. On July 1, 1946, Jackson wrote to the Zoning Board of Adjustment requesting that Block No. 5, with the exception of lots 1, 2 and 3, be zoned "commercial". The city in its comprehensive zoning plan had originally zoned all this property for residences as was its custom in respect to such territory in its raw undeveloped status. The zoning board issued a certificate on

July 30, 1946 showing that Block No. 5, with the exception of lots 1, 2 and 3, was zoned "commercial", and so recommended to the city commission in 1947. But the city commission took no action in that respect until September 19, 1950, when the zoning board again brought it to their attention. On that day the city commission passed ordinance No. 797–F, which classified as "commercial" Block No. 5, with the exception of lots 1, 2 and 3. No question was raised as to the procedural requirements in adopting the ordinance (section 15 of the amended bill), except that it was not authorized by law, in that, it does not alter or rearrange the boundary of any zone or district, Title 37, chapter 16, Code, and that the city did not give any recognition to the restrictions and limitations in exercising the power conferred by Title 37, section 779. See, Title 62, section 715.

Before that ordinance was adopted, and on June 10, 1947, Jackson and associates filed in the probate office certain restrictions which were declared to apply to the Crestwood subdivision, except such portion as was "Reserved for Crestwood Business Section", which was expressly omitted. Jackson and associates prepared and distributed a large amount of advertising matter with a map of the subdivision showing that Block 5, with the exception of lots 1, 2 and 3, was "Reserved for Crestwood Business Section". As stated above, the complainants are A. D. Edwards and wife who purchased an attractive house and lot across 56th Street, immediately east of Block 5, in November 1952. There were twelve intervenors who had purchased homes in the subdivision. Most of those homes were purchased by the present owners after Block 5 had been rezoned by the city commission. There is evidence that Jackson and his associates did not emphasize their purpose to carry out the plans for the business area, but at times indicated that there would be a long delay in that respect. Mr. Byrum, chairman of the board of adjustment of the city, testified in response to complainants' counsel:

"And I will say from February 1948 until the first day that you probably

ever walked in my office, I have had numerous, numerous inquiries regarding the zoning of Crestwood; and it was pointed out that that area was set up, and I cannot say how many—I would estimate 150 or 200 in the period from 1948 until the time I even talked to you—yours is the first adverse question or remark that I have ever heard during the course of you might say five years or four and one-half years. The general public has known that that spot was set aside in Crestwood. We have dozens of people every day that come into our office to examine our maps and satisfy themselves as to what the existing zoning classifications are."

On January 14, 1953 Jackson leased to Shell Oil Company (a respondent) a portion of Block 5 in the southeast corner, 150 feet on Highway No. 78 and 125 feet along 56th Street. On February 24, 1953 the city commission adopted a resolution permitting Shell Oil Company to erect a drive-in filling station on that lot. This was approved by the chief building inspector, chief of the fire department, the city engineer and the traffic officer of the police department of the City of Birmingham. On the same day the city building inspector issued a permit for the construction of the service station, and on May 14, 1953 the fire department issued a permit for the installation of the tanks for said station.

On March 10, 1953, Mr. William Soroka, who appears as attorney for complainants, wrote Mr. Jackson that "the original plan drawn by Mr. Van Keuren for a most modern and elaborate shopping center is acceptable by the property owners of Crestwood". (Mr. Van Keuren is an architect and had made a preliminary drawing for a shopping center in Block 5.) That letter also contained the following: "Anything less, or short of that, is not acceptable. It was represented by your agents that the cost of such a shopping center would be $200,000 to $250,000, and that is in keeping with our demands. We purchased our property and our homes with the understanding that the shopping center would be the finest, in keeping with the homes in Crestwood".

The drawing showed an automobile service station on the corner of 56th Street and Crestwood Boulevard. Jackson claims that he could not get the shopping center developed as contemplated. The Korean War had something to do with it at first. But that he (Jackson) always intended that Block 5 should be a shopping center with a filling station on this corner. This is about ten blocks from First Avenue, North, at Woodlawn where there is a shopping center. There are also some small stores and service stations on Fifth Avenue, South. There was not shown to be any pressing need for a filling station in Block 5. Jackson in a letter to Soroka advised him that any development "will be handled in such way as not to hurt any of our good friends in Crestwood". About three hundred very expensive and highly restricted residences have been built in the subdivision, some before and some after the rezoning.

Most of the witnesses who testified thought that a service station at this point was not needed and would depreciate the value of the residences. An effort was made to compensate Jackson in the sum of $10,000 if he would convert that area into residential property and to guarantee a maximum price for the lots. On April 1, 1953, Mr. Soroka and other property owners petitioned the zoning board to amend the zoning layout so as to change Block 5 (except lots 1, 2 and 3) from commercial to residential. The board had a public hearing and numerous residents were represented and testified. The zoning board adopted a resolution recommending that the city commission consider unfavorably the petition to amend. The city commission had a hearing on April 7, 1953 and denied the petition. On that day the instant bill of complaint was filed.

The evidence was conflicting as to the probable effect of the proposed filling station on the property in the subdivision. We assume the trial court reached the conclusion that it would be harmful and work "hurt, inconvenience, or damage" to property owners in Crestwood, or some of them here complaining, section 1081, Title 7, Code, and that it would be a nuisance on the

southeast corner of Block 5, but not on the southwest corner of that block, about three hundred feet away, and that the damages in consequence of such nuisance would be irreparable, not merely possible, but to a reasonable degree certain, section 1083, Title 7, and, therefore, the erection of the filling station on the southeast corner should be enjoined but not on the southwest corner.

▇ The pleadings do not put in issue any question in respect to the southwest corner. The effect of that feature of the decree is a finding that a filling station on the southeast corner would work hurt, inconvenience, or damages, whereas it would not do so on the southwest corner. That conclusion is only valuable as the finding of a fact, and can have no other force. The decree was very broad in its terms and enjoined respondents from locating a filling station anywhere on Block 5, except on the southwest corner on an area of 150 feet on the boulevard and extending back 125 feet. The court in the same decree expressed the opinion that the ordinance No. 797–F of the city commission, adopted September 10, 1950, is valid in all respects. But there was no decree to that effect. Thompson v. Maddux, 105 Ala. 326, 16 So. 885; Hill v. Hill, 211 Ala. 293, 100 So. 340; Lyall v. Lyall, 250 Ala. 635, 35 So.2d 550; Employers' Ins. Co. v. Brooks, 250 Ala. 36(4), 33 So.2d 3. We mention that at this time because there is a cross-appeal by complainants in the original bill, who assigned as error that feature of the decree holding the ordinance valid. Those assignments have no decree of the court on which to rest.

We will here observe that most certainly the validity of that ordinance is material to the result decreed by the court. If the ordinance is void it is not of any value as evidence, and the area would be zoned "residential"; if it is valid, it must be given such value as authorized by law. The amended bill admits the due adoption of the ordinance but alleges that it is unconstitutional, null and void principally because it is "piece-meal" or "spot" zoning;

damaging to property owners; not a fair exercise of the police power; arbitrary; not authorized by law, Title 37, Chapter 16, Code; violates the equality clause and due process clause of the Fourteenth Amendment. All of the objections may be included in that analysis.

▇ While the cross-appeal and cross assignments of error cannot be upheld because there is no feature of the decree to support them, we must take a look as the ordinance rezoning the area to see if it is void, assuming that it was duly adopted. We take judicial knowledge of the ordinances of the City of Birmingham. Title 7, section 429(1), Pocket Part Code. Therefore, we take judicial knowledge of its initial zoning ordinance and amendments to it, which have been often before us. Water Works Board of City of Birmingham v. Stephens, Ala., 78 So.2d 267.[1] The city has full police power, which includes the power to make a comprehensive zoning ordinance and amend it. Title 62, section 654, Pocket Part Code. Hawkins v. City of Birmingham, 248 Ala. 692, 29 So.2d 281.

▇ We take judicial notice that it is comprehensive as required by section 777, Title 37, Code, and Title 62, section 710, and recognize that the zoning of a "spot", not a part of a comprehensive plan, is not authorized by law. Chapman v. City of Troy, 241 Ala. 637, 4 So.2d 1; Davis v. City of Mobile, 245 Ala. 80, 16 So.2d 1; Johnson v. City of Huntsville, 249 Ala. 36, 29 So.2d 342; Alabama Alcoholic Beverage Control Board v. City of Birmingham, 253 Ala. 402, 44 So.2d 593; Phillips v. City of Homewood, 255 Ala. 180, 50 So.2d 267: but that is not here undertaken. This ordinance as amended being a part of a comprehensive plan is not "spot" zoning.

▇ Our cases do not indicate that the city may not amend its comprehensive plan by changing an area in it from one use to another. On the other hand, section 779, Title 37, and section 715, Title 62, Code, give express authority to do so. The nature and purpose of the zoning power together

with its limitations and restrictions have been so often stated by our decisions, we need not repeat them. In addition to the cases cited above, see Leary v. Adams, 226 Ala.·472, 147 So. 391; Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553; Jefferson County v. City of Birmingham, 256 Ala. 436, 55 So.2d 196.

It is admitted that the ordinance was duly adopted and, therefore, that there was a public hearing after notice was given when these complainants and intervenors could have been present and heard by the city commission. Sections 778, 779, Title 37, Code. The city commission's act in adopting the amendment was the result of a recommendation by all the city officers whose duty it was to see that the safety and comfort of the people are protected. They are the officers charged by law as experts on the subject to make recommendation in that respect.

The effect of the city ordinance is not to permit a service station to be operated on a lot in Block 5 as indicated, but to enact that the city zoning system will not prohibit that to be done on the proposed lot. It simply eliminates one reason for its disallowance. The right is therefore controlled by other principles. Jackson and his lessees are not authorized to erect and maintain a nuisance on the lot in question. A filling station is not per se a nuisance though located in a residential section. Gillette v. Tyson, 219 Ala. 511, 122 So. 830; Fletcher v. Barnard, 222 Ala. 380, 133 So. 29; Leary v. Adams, 226 Ala. 472, 147 So. 391; Bloch v. McCown, 223 Ala. 348, 135 So. 633; Maples v. Milton, 232 Ala. 483, 168 So. 868; Milton v. Maples, 235 Ala. 446, 179 So. 519.

Section 1081, Title 7, Code, provides that a nuisance is "anything that worketh hurt, inconvenience, or damage to another * *. The inconvenience complained of must not be fanciful, or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man." A proposal may be enjoined before the structure is made only when it will cause "irreparable damages, and such consequences are not merely possible, but to a reasonable degree certain". In such event equity will "interfere to arrest a nuisance before it is completed." Section 1083, Title 7, Code.

It is settled by our decisions that the mere fact of depreciation or diminution of value, without more, is unavailing as a ground for equitable relief to enjoin the operation of a filling station. Nevins v. McGavock, 214 Ala. 93, 106 So. 597; Fletcher v. Barnard, supra; Milton v. Maples, 235 Ala. 446, 179 So. 519; Marshall v. City of Mobile, supra. That sort of hurt alone therefore does not classify a filling station as a nuisance.

So we inquire as to when its operation will be a nuisance near a residential district, but in an area which is not zoned against it and whose zoning status would permit it. It was said in Maples v. Milton, 232 Ala. 483, 168 So. 868, that a filling station may become an abatable nuisance if "there be a continuing emission of odors, vapors, dust, smoke, gas and noise" and the headlights of automobiles, glaring station headlights, flashing at unreasonable hours of the night into the bedrooms and other portions of the premises, which will disturb the peace and comfort of the complainant and household, together with the operation of a tire service station on said lot which will be attended with loud and disagreeable noises due to the manipulation of steel or other metal parts with hammers and other instruments, all of which will work hurt, inconvenience and damage. Those allegations in substance are made in the bill in the instant case.

When that case was heard on the evidence, a final decree was rendered denying the injunction on the ground that those allegations were not sustained. Milton v. Maples, 235 Ala. 446, 179 So. 519. The evidence showed that the adjoining area was not strictly residential; that other filling stations were nearby; that the filling station was neatly kept; that no noise or offensive odors came from it; that it had a neat appearance; that no inconvenience was experienced from the presence of the

station. There was no zoning question involved.

Those cases illustrate the theory that a filling station merely should not be classified as a nuisance because it may cause depreciation in the value of nearby residential property, when it is located on a lot zoned for such enterprise; and that such a business is not per se a nuisance. But it may be so conducted as to become a nuisance as was alleged, but not proven, in the Maples case, supra.

In the instant case the proposal is not only not a nuisance per se, but has the unqualified approval of the city commission, the zoning board of adjustment, the building inspector, the chief of the fire department, the city engineer and traffic officer. The zoning for "commercial" was adopted before complainants purchased their property. The maps from the beginning showed that this property was reserved for business.

The decree of the court seemed to assume that any sort of filling station on the southeast corner of Block 5 would be per se a nuisance on account of the surrounding residential restricted area. That philosophy does not conform to our cases. The filling station when completed may be conducted as in the Maples case, supra, and not be a nuisance. The lights may be screened off so as not to cast rays in complainant Edwards' house. If it is so operated as to be a nuisance when it is constructed, these complainants would then have just case to complain. There is no evidence that it will be so operated. When lights will not be cause to complain has been treated with respect to other enterprises conducted at night. Drennen v. Mason, 222 Ala. 652, 133 So. 689; Downey v. Jackson, 259 Ala. 189, 65 So.2d 825.

The decree should be reversed and one here rendered denying relief to complainants and intervenors and dismissing the cause.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Cross-appeal dismissed.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MAYFIELD, JJ., concur.