265 So.2d 564

George A. HAAS et al.

v.

CITY OF MOBILE et al.

I Div. 699.

Supreme Court of Alabama.

Aug. 10, 1972.

Armbrecht, Jackson & DeMouy and Broox G. Holmes and Thomas M. Ammons, III, Mobile, for appellee, Baldwin Development Corp.

John L. Lawler, Mobile, for appellee, City of Mobile.

———◆———

Diamond & Lattof, Mobile, for appellants.

**18**

HEFLIN, Chief Justice

Appellants-complainants George A. Haas, Robert E. Finch and Dr. C. Adrien Bodet bring this appeal from an adverse decree to their declaratory judgment action in which appellee-respondents City of Mobile, John K. Collings and Alletta Turner, and appellee-intervenor Baldwin Development Corporation, were parties in the Circuit Court of Mobile County, in Equity. The bill of complaint sought to declare void and unconstitutional Zoning Ordinance No. 80–142, which amended The Zoning Ordinance of the City of Mobile by rezoning a 12.25 acre tract of wooded land within a R–A (Residence-Agriculture) district to a R–3 (Multiple-Family-Residence) district so that luxury type apartment buildings could be built.

Appellants-complainants George A. Haas, Robert E. Finch and Dr. C. Adrien Bodet are owners of residences in the neighborhood of the 12.25 acre tract. Appellee-respondent John K. Collings is the owner of the 12.25 acre tract and appellee-respondent Alletta Turner holds a vendor's lien on that land. Baldwin Development Corporation obtained an option on the 12.25 acre tract from Collings and intervened in the proceeding below. The Attorney General of the State of Alabama was served and filed a waiver as to future notice. Hereinafter the appellants-complainants will be referred to as appellants, and where the term "appellees" is used it will include John K. Collings, Alletta Turner, Baldwin Development Corporation and the City of Mobile.

The 12.25 acre tract is the middle portion of a rectangularly shaped tract of land, which apparently was approximately 40 acres in size, bounded on the north by Old Grant Street, on the east by Cottage Hill Road, on the south by Eslava Creek and on the west by Sage Avenue. In the neighborhood to this 12.25 acre tract there are residential areas, a private swimming pool, commercial areas, a church and one tract which had been previously rezoned R–3.

Appellants are owners of residential property, located both on the eastern portion of the large rectangularly shaped tract and in the residential sections to the north of Old Grant Street directly across from the 12.25 acre tract. The residences range in value from $30,000 to $100,000.

The general area was zoned R–1 (best residential classification), however, the swimming pool had been granted a variance, the commercial buildings had been favored with variances, and some of the property had been rezoned to R–3 on a previous occasion. The 12.25 acre tract originally was zoned R–1 but in 1967 was rezoned to R–A.

Efforts to rezone the 12.25 acre tract from R–A to R–3 began with an application filed with the Zoning Administrator who, based upon studies of the area, location, traffic consideration, etc., recommended to the Planning Commission that the land be rezoned. The Planning Commission held two public meetings where extensive discussion and argument occurred on the proposed rezoning. The Planning Commission's recommendation to the City Commission was in favor of amending the zoning ordinance with a condition that a second means of ingress and egress to the property be made by opening the proposed apartment complex to be built on the 12.25 acre tract to the proposed Eslava Creek

Parkway. A planning consultant also recommended approval. After hearing considerable debate by persons for and against the proposed rezoning, the Mobile City Commission unanimously approved the rezoning.

According to the "Major Street Plan" of the City of Mobile, the proposed Eslava Creek Parkway will be one of the major highways connecting Airport Boulevard with Cedar Point Road and Mobile Bay Parkway. Some construction of said Eslava Creek Parkway has already begun in close proximity of the 12.25 acre tract.

Ordinance No. 80–142 provided, among other things, the following:

"* * * and further provided, however, that no lot or parcel of land hereinabove described shall be used for any use allowed in a R–3 district until all of the conditions set forth below have been complied with: subject to reservation of the right-of-way for Eslava Creek Parkway and that a second means of ingress and egress to the proposed Eslava Creek Parkway be provided."

The Chancellor decreed that Zoning Ordinance 80–142 was valid and constitutional. From such decree the appellants have perfected their appeal.

The first contention raised by the appellants is that Ordinance No. 80–142 is void because the conditions precedent to the use of the property require a reservation of the right-of-way for Eslava Creek Parkway and a second means of ingress and egress to the proposed Eslava Creek Parkway in the area reclassified. The appellants contend that a municipality has no authority to amend a zoning ordinance subject to a collateral agreement (or a collateral deed) to be executed between the city and the property owner because such constitutes "contract zoning".

In support of their position appellants rely upon Hartnett v. Austin (Fla.), 93 So. 2d 86; Baylis v. City of Baltimore, 219 Md. 164, 148 A.2d 429; Treadway v. City of Rockford, 24 Ill.2d 488, 182 N.E.2d 219; and Lewis v. City of Jackson (Miss.), 184 So.2d 384.

In an article entitled, "Zoning by Contract. With Property Owner", by Ralph W. Crolly and C. McKim Norton, 133 New York Law Journal 4 (1955), "contract zoning" is defined as follows:

"The principle involved may be simply stated. A municipality has no power to make any agreement or deal which will in any way control or embarrass its legislative powers and duties. Neither the police power of the state itself nor that delegated by it to a municipality is subject to limitation by private contract; nor is the exercise of such power to be alienated, surrendered or limited by any agreement or device. Zoning of properties by a municipality being legislative in character cannot be bargained or sold. The rezoning of a parcel of property by a municipality based in any way upon an offer or agreement by an owner of property is inconsistent with, and disruptive of, a comprehensive zoning plan."

On the other hand, it is well established that a zoning ordinance may place upon a property owner reasonable restrictions and requirements in the use of the zoned property and this court has expressly approved such restrictions and requirements. Walls v. City of Guntersville, 253 Ala. 480, 45 So.2d 468; Southern Rock Products Co. v. Board of Zoning Adjustment, 282 Ala. 186, 210 So.2d 419. See also Sections 774, 776 and 777 of Title 37 of the Code of Alabama, 1940.

The precise question of the validity of the requirement of landowner dedication for highways, streets and alleys as a prerequisite for zoning applicability has been treated in three jurisdictions: Kansas— Arkenberg v. City of Topeka, 197 Kan. 731, 421 P.2d 213; and Hudson Oil Company of Missouri, Inc. v. City of Wichita, 193 Kan. 623, 396 P.2d 271; Washington—State ex rel. Myhre v. City of Spokane, 70 Wash.2d 207, 422 P.2d 790; and California—Scrut-

ton v. County of Sacramento, 275 Cal.App. 2d 412, 79 Cal.Rptr. 872.[1] Each of these jurisdictions holds that imposing the condition of dedication for rights-of-way is a valid exercise of police power where utilized to meet the increase in traffic congestion and minimize this annoyance of the change from single residence to the new land use.

■ It is well established in our jurisdiction that zoning is a legislative act, Ball v. Jones, 272 Ala. 305, 132 So.2d 120, which rests on the exercise of police powers of a municipality, Fleetwood Development Corp. v. City of Vestavia Hills, 282 Ala. 439, 212 So.2d 693.

The appellant's position is that "contract zoning" is proved because of a letter from John K. Collings addressed to Commissioner Lambert Mims, dated February 25, 1971 (subsequent to the filing of the action in the court below), which states as follows:

"This will confirm my telegram of February 24, 1971, regarding Zoning Ordinance No. 80–142, adopted October 13, 1970.

"It is clearly understood and intended on my part that the right-of-way for Eslava Creek Parkway will be dedicated to the City of Mobile as agreed upon at a previous meeting with you."

■ However, the letter is subject to a different interpretation. It could be interpreted as being a written confirmation that this property owner intends to comply with one of the requirements of conditions of the ordinance. Such letter can hardly be determinative of pre-adoption negotiations of "contract zoning" since it is dated more than four months after the adoption of the ordinance and the date of the "previous meeting" between Commissioner Mims and tract-owner Collings mentioned in the letter is not established by any evidence. No other evidence concerning the telegram appears in the record. The trial court heard the evidence ore tenus and is in a better position to make the factual determination of whether these zoning requirements were reasonable measures in light of anticipated traffic considerations or mandatory contractual prerequisites which might control or embarrass the legislative prerogatives of the city.

In the case under review the landowner is agreeable to the land dedication requirements of the ordinance. This court wants it clearly understood that this holding should not be construed as authority for a trial court to uphold unacceptable requirements of a zoning ordinance which attempts to pre-empt condemnation proceedings for that issue is not presented in this case.

Next, the appellants contend that the amending ordinance is vague, indefinite and uncertain in its terms. This attack is directed towards the portion of the ordinance which requires a reservation of

1. Requirements involving dedications in these cases are as follows: *Arkenberg*—"a ten foot right-of-way along Gage Boulevard", 421 P.2d at 218; *Hudson Oil*—"10-foot strip of land along the North edge of the proposed subdivision for an East-West service or access road along the South side of Kellog Avenue", 396 P.2d at 272; *Myhre*—"certain of its land for the widening of the adjacent streets within the city engineer's right-of-way plan for the area . . . . to acquire and convey to the city, without cost, additional street area (if any) needed for traffic safety . . . . 'to be constructed at no cost to the City the necessary curbs, sidewalks, drainage, pavement, channelization and street lighting'," 422 P.2d at 795; *Scrutton*—"a 10-foot right-of-way for widening Whitney Avenue and improve it with pavement, sidewalk, curbs and gutters; that on the east edge of her property she dedicate a 27-foot strip to form the west half of Foster Way; that she join an assessment district which would improve the west half of Foster Way with paving, sidewalk, curbs and gutters." 275 Cal.App.2d at 415, 79 Cal.Rptr. at 875.

These cases have been cited to show treatment of this issue in other jurisdictions; however, this court does not approve or disapprove of the holdings of these cases under like factual situations because such is not before this court at this time.

right-of-way for Eslava Creek Parkway and a means of ingress and egress to said proposed parkway.

The appellants contend since dimensions of the right-of-way for Eslava Creek Parkway are not spelled out with exactness that this constitutes unconstitutional vagueness and uncertainty. There was testimony from James T. Chapman, Assistant City Engineer for the City of Mobile, that the location of a corridor for this parkway had been determined and was shown on maps which were introduced as exhibits. A copy of the city's Major Street Plan, which reflected the general location of said parkway, was introduced as an exhibit. There was evidence that a portion of the parkway had been completed in the vicinity of the subject property. Mr. Chapman stated the present drawing of the right-of-way shows a 90-foot width but the width might vary following a survey and that it could be 80 feet or 100 feet as it crossed the 12.25 acre tract instead of 90 feet.

Next, the appellants contend that the location for the second means of ingress and egress across the 12.25 acre tract is undetermined. There was testimony that the City had not yet determined the exact location, but that it would be of the standard width of 27 feet after the exact location had been determined by surveys.

Assuming arguendo that vagueness, indefiniteness and uncertainty exist as to the actual metes and bounds description of Eslava Creek Parkway, and the location of the ingress and egress road across the 12.25 acre tract to Eslava Creek Parkway, it seems to this court that the appellants are not in a position to be injured by such vagueness, indefiniteness and uncertainty. Only those owning an interest in the 12.25 acre tract could be damaged since only their lands will be affected by an adverse location of the access road or an enlarged dimension of Eslava Creek Parkway's right-of-way. These property owners, obviously, do not object to the terms of the ordinance. The requirement of the reservation of a right-of-way for a second means of ingress and egress to Eslava Creek Parkway benefits the appellants rather than injures them. If such access road to Eslava Creek Parkway was not required, then traffic, obviously, would increase on existing roadways following the occupancy of the proposed apartments. If vagueness, uncertainty and indefiniteness exist, such is related only to locations on the 12.25 acre tract.

Appellant's third contention is that the ordinance is void in that it is arbitrary, unreasonable and amounts to an arbitrary fiat. The basic contention is that this ordinance constitutes "spot" zoning. This court has long condemned "spot" or "piece-meal" zoning, where the facts show municipal officials have attempted partial zoning of a municipality. Chapman v. City of Troy, 241 Ala. 637, 4 So.2d 1; Johnson v. City of Huntsville, 249 Ala. 36, 29 So.2d 342. Recent decisions have limited condemnation of "spot" or "piecemeal" zoning to the situation where there has been no comprehensive plan. See Shell Oil Company v. Edwards, 263 Ala. 4, 81 So.2d 535 and Episcopal Foundation of Jefferson County v. Williams, 281 Ala. 363, 202 So.2d 726, which recites the proposition that where an existing comprehensive plan is in effect, no amendment thereto can be attacked as being "spot" zoning. These decisions place this jurisdiction in a unique position regarding the issue of "spot" zoning. The majority position is that rezoning of a small tract of land out of harmony and in conflict with a comprehensive plan may constitute "spot" zoning. See 1 E. Yokely, Zoning Law and Practice, § 8–3, at 363, (3rd ed. 1965), and cases annotated at note 6. But even if this court followed the majority view, the rezoning of the parcel in question does not amount to "spot" zoning when the comprehensive plan of Mobile is so considered. Its size (12.25 acres), the other nonconforming land uses in the immediate vicinity, the proximity to Bel Air Mall, and the adjacent proposed parkway militate against the charge of "spot" zoning.

The test for whether an ordinance is arbitrary is well established in our jurisdiction in Waters v. City of Birmingham, 282 Ala. 104, 108, 209 So.2d 388, 391:

"* * * if the adoption of the ordinance raises questions upon which reasonable differences may exist in view of all the circumstances, and the wisdom of the ordinance *is fairly debatable*, then the action of a municipal governing body in adopting the ordinance will not be deemed arbitrary, a court being unwilling under such circumstances to substitute its judgment for that of the municipal governing body acting in a legislative capacity. * * *" (Citations omitted) (Emphasis supplied).

The above selected portion of *Waters* was quoted in Cudd v. City of Homewood, 284 Ala. 268, 224 So.2d 625.

■ The record is replete with testimony both for and against the proposed zoning. In light of the rule restated in *Waters* and followed in *Cudd*, the court finds the enacting of this ordinance was fairly debatable, and as such is not invalid as being arbitrary.

■ Appellants' fourth contention is that the city did not follow statutory procedure in enacting the ordinance since the motion to adopt the ordinance was not reduced to writing and read before the vote was taken thereon. If such motion had been reduced to writing it would have probably appeared as follows: "I move that Ordinance 80–142 be adopted."

This question involves interpretation of Section 98 of Title 37, Code of Alabama, 1940, which states in salient part:

"* * * Every motion, resolution or ordinance introduced at any and every such meeting shall be reduced to writing and read before any vote thereon shall be taken; and the yeas and nays thereon shall be recorded. * * *"·

The record shows that the ordinance was reduced to writing and read in its entirety at the October 6, 1970 meeting. Then at the October 13, 1970 meeting with the minutes containing the ordinance being before the City Commission, there was debate on the ordinance, and after much discussion Commissioner Mims orally moved the ordinance be adopted. It was seconded and unanimously carried. The vote was then recorded.

Upon these facts this court is convinced that the requirements of the statute were met when the ordinance was reduced to writing and read at the October 6th meeting. The intent of the statute is clearly that substantive matters, whether motions, resolutions or ordinances, should be reduced to writing and read before action is taken on them. Where the substantive matter appears in writing and is read to the city commissioners, the parliamentary motion to adopt need not be reduced to writing and read to fulfill the statutory requirements of § 98 of Title 37, Code of Alabama, 1940.

Affirmed.

MERRILL, HARWOOD, BLOOD-WORTH, MADDOX, McCALL and SOMERVILLE, JJ., concur.

COLEMAN, J., dissents.