MOORE, Chief Justice
(concurring specially).
I agree with the main opinion on original submission that a “regulatory takings” jurisprudence does not comport with Art. I, § 23, Ala. Const. 1901. The underlying issues in this case are an unconstitutional use of both zoning and annexation. M & N Materials, Inc. (“M & N”), brought claims for declaratory relief on those issues.[1] The injury done to M & N was done through zoning and annexation of land, not through eminent domain under § 23. Thus, recognizing regulatory takings based on § 23 does not address the underlying root causes that have impelled many state courts to adopt Justice Oliver Wendell Holmes’s “regulatory takings” framework. Courts have no such creative powers, for the Constitution gives the judiciary no legislative powers to say what the law shall be for future applications.
Although the Court lacks the legislative power to create new remedies, the Court has power to strike down unconstitutional acts of legislative bodies. “[W]henever a particular statute contravenes the Constitution, it will be the duty of the judicial tribunals to adhere to the latter and disregard the former.” The Federalist No. 78 (Alexander Hamilton), at 467 (Clinton Rossiter ed., 1999). “The constitution of the State ... is the paramount, supreme law, of primary obligation. All legislative enactments are subservient to it, and if they conflict with it, are without validity.” City of Mobile v. Stonewall Ins. Co., 53 Ala. 570,575(1875). Because
“[wjhere the will of the legislature declared in its statutes, stands in opposition to that of the people declared in the Constitution, the judges ought to be governed by the latter rather than the former. They ought to regulate them decisions by the fundamental laws, rather than by those which are not fundamental.”
The Federalist No. 78, at 466.
I believe that taking and zoning are two separate issues. Courts have adopted regulatory takings without addressing the underlying problem of unconstitutional state and local regulations. Thus, the fundamental issue is whether the Town of Gur-ley’s actions are constitutional under zoning and annexation law, not whether the Town’s actions may be somehow converted into compensable injuries through a takings construct. In this special writing, I will address Alabama’s laws governing zoning and annexation and explain why the text of § 23 of the Constitution may not be applied to create regulatory takings.

I. Zoning and Annexation

A. Zoning

Our general rule is that “[a]n arbitrary and capricious ordinance should be set aside whether there is, or is not, a comprehensive zoning plan.” COME v. Chancy, 289 Ala. 555, 565, 269 So.2d 88, 97 (1972). *31 A zoning ordinance may be set aside if it “ ‘passes the bounds of reason and assumes the character of a merely arbitrary fiat.’ ” Leary v. Adams, 226 Ala. 472, 476, 147 So. 391, 394 (1933). The ultimate test “is whether the ordinance creates zones ... that ... are consistent with the land use pattern of the area, and bear a substantial relationship to the public health, safety, morals, and general welfare.” Chancy, 289 Ala. at 565, 269 So.2d at 97.
Zoning may be “arbitrary and capricious” in several ways. First, zoning that is inconsistent with a comprehensive plan is arbitrary and capricious. Zoning must be done “in accordance with a comprehensive plan.” § 11-52-72, Ala.Code 1975. “There must be a comprehensive plan.... [T]he owner of property may use it as he sees fit, provided it is not a nuisance ... nor within the prohibition of zoning ordinances.” Davis v. City of Mobile, 245 Ala. 80, 82-83, 16 So.2d 1, 3 (1943) (emphasis added).
Second, zoning that leaves the exercise of property rights to the whims of special groups is arbitrary and capricious. “Nor can the exercise of property rights be left to the caprice, whim or aesthetic sense of a special group of individuals who may object to the use by a property owner of the rights fixed by such ordinance or left unrestricted thereby.” Johnson v. City of Huntsville, 249 Ala. 36, 40, 29 So.2d 342, 345 (1947). See City Council of Montgomery v. West, 149 Ala. 311, 314, 42 So. 1000, 1000 (1907) (“ ‘Ordinances which invest a city council ... with a discretion which is purely arbitrary, and ... exercised in the interest of a favored few, are ... invalid.’ ” (quoting Smith on the Modem Law of Municipal Corporations § 530)).
Third, zoning that lacks a substantial relation to the public health, safety, morals, and general welfare is arbitrary and unconstitutional. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926). The police powers may not be used to impose unreasonable and unnecessary zoning ordinances “upon the use of private property. ... [Gjovernmental interference by zoning ordinances with such use, is not unlimited, and ... should bear some substantial relation to the public health, safety, morals, or general welfare.” Leary v. Adams, 226 Ala. at 474, 147 So. at 392.
This Court has said that constitutional rights “cannot be abridged or destroyed under the guise of police regulations.” First Avenue Coal & Lumber Co. v. Johnston, 171 Ala. 470, 473, 54 So. 598, 599 (1911). See Panhandle E. Pipe Line Co. v. State Highway Comm’n of Kansas, 294 U.S. 613, 622, 55 S.Ct. 563, 79 L.Ed. 1090 (1935) (“The police power of a state ... is subordinate to constitutional limitations.”). Police powers are an aspect of legislative power or the general power of government, or both. See Art. IV, § 44 (“The legislative power of this state shall be vested in a legislature.... ” (emphasis added)), and Art. I, § 36 (“[Ejverything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate.” (emphasis added)).
However, the Constitution also protects the rights of private property and confines the government to the sole object of protecting the citizen’s property. See Art. I, § 13, Ala. Const. 1901 (“[Ejvery person, for any injury done him, in his lands ... shall have a remedy by due process of law-”); Art. I, § 35, Ala. Const. 1901 (“That the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property. ...”).
Thus, whether viewed as an aspect of general powers of government referenced in Art. I, § 36, or the legislative powers *32 referenced in Art. I, § 44, a local government’s use of the police powers to enact zoning ordinances may not “abridge or destroy” Alabama’s constitutional protections of private property contained in Art. 1, §§ 13 and 35. Johnston, 171 Ala. at 473, 54 So. at 599.
Fourth, spot zoning is arbitrary and capricious. Spot zoning occurs when municipal officials attempt to partially zone a municipality or zone by “piecemeal.” Johnson v. City of Huntsville, 249 Ala. 36, 29 So.2d 342 (1947). As stated above, “[a]n arbitrary and capricious ordinance [will] be set aside [and] ... any theory of ‘spot zoning’ would have to give way to the larger principle.” Chancy, 289 Ala. at 565, 269 So.2d at 97. Alabama’s rule limits spot zoning to cases where no comprehensive plan exists. Shell Oil Co. v. Edwards, 263 Ala. 4, 9, 81 So.2d 535, 540 (1955); Haas v. City of Mobile, 289 Ala. 16, 21, 265 So.2d 564, 568 (1972).[2]

B. Annexation

The Town of Gurley’s annexation of the quarry property is another fundamental issue underlying this case. “Alabama’s statutory methods of annexation require that property owners consent to the annexation before an annexation of their property can occur. See Ala.Code 1975, § [§ ] 11-42-1 through 11-42-88.” City of Fultondale v. City of Birmingham, 507 So.2d 489, 491 (Ala.1987) (plurality opinion) (emphasis added) (noting that unanimous consent is not required under all methods of annexation). “ ‘[A]n unreasonable annexation is invalid or void.’ ” City of Birmingham v. Community Fire Dish, 336 So.2d 502, 504 (Ala.1976) (quoting 2 McQuillin, Municipal Corporations § 7.23 (Rev. ed., 1966)). “ ‘[A] municipal corporation may not extend its boundaries by the annexation of territory ... where it would be unreasonable to do so.’ ” Id.

II. Eminent Domain

The ultimate question, however, is whether there is an additional ground for relief under the eminent-domain provision of the Alabama Constitution. Section 23, Ala. Const. 1901, states, in relevant part: “[P]rivate property shall not be taken for, or applied to public use, unless just compensation be first made therefor.” Since so-called “regulatory takings” were not recognized in 1901 when our current Constitution was adopted, we have no direct evidence as to whether the people intended for § 23 to apply to this kind of case. Consequently, an exposition of § 23 is needed to determine whether “regulatory takings” are prohibited by the letter and the spirit of § 23.
The Dutch jurist Hugo Grotius first coined the term “eminent domain” in his work De Jure Belli ac Pads Libri Tres (“On the Law of War and Peace in Three Books”). Alberto B. Lopez, Weighing and Reweighing Eminent Domain’s Political Philosophies Post-Kelo, 41 Wake Forest L.Rev. 237, 245 (2006). Grotius said the state had the power of eminent domain “over its citizens and over the property of citizens for public use.” 2 Hugo Grotius, De Jure Belli ac Pads Libri Tres 102 (Francis W. Kelsey trans., Oxford Univ. Press 1925) (1625). According to Grotius, the proper exercise of eminent domain had two requisites: “the first requisite is public advantage; then, that compensation from the public funds be made, if possible, to the one who lost his right.” Id. at 385. However, Grotius reasoned that the state had the power of eminent domain because *33 “Ml private ownership [of property] was first acquired in common for the state or its head; and that then a distribution was made individually to private persons, in such a way, nevertheless, that their ownership was dependent on that earlier ownership.” Id. at 219. Thus, Grotius reasoned that private property ultimately “belongs to the state under the right of eminent domain.” Id. at 807. This rationale gave rise to Grotius’s rule:
“[T]he state, or he who represents the state, can use the property of subjects, or even destroy it or alienate it, not only in case of direct need ... but also for the sake of public advantage; and to the public advantage those very persons who formed the body politic should be considered as desiring that private advantage should yield.”
Id. Thus, Grotius believed that the state could take private property for public use so long as just compensation was given, but his reasoning suggests a liberal interpretation of that rule: the state could use or exercise dominion over private property so long as the state or the public considered it desirable to the public advantage.
The common law also recognized the legislature’s right to take private property for public use upon just compensation, but under a rationale quite different from Grotius’s, and one that provided more protection to private-property owners. Blackstone wrote:
“So great moreover is the regard of the law for private property, that it will not authorize the least violation of it; no, not even for the general good of the whole community.... In vain may it be urged, that the good of the individual ought to yield to that of the community; for it would be dangerous to allow any private man, or even any public tribunal, to be the judge of this common good, and to decide whether it be expedient or no. Besides, the public good is in nothing more essentially interested, than in the protection of every individual’s private rights.... In this and similar cases the legislature alone can, and indeed frequently does, interpose, and compel the individual to acquiesce. But how does it interpose and compel? Not by absolutely stripping the subject of his property in an arbitrary manner; but by giving him a Ml indemnification and equivalent for the injury thereby sustained. The public is now considered as an individual, treating with an individual for an exchange. All that the legislature does, is to oblige the owner to alienate his possessions for a reasonable price; and even this is an exertion of power, which the legislature indulges with caution, and which nothing but the legislature can perform.”
1 William Blackstone, Commentaries *139. Thus, unlike Grotius, the common law held private-property rights in such a high regard that the common good alone was not a sufficient justification for violating them. This is because private property is a gift of Almighty God, not the state:
“[W]e are informed by holy writ, the all-bountiful Creator gave to man ‘dominion over all the earth; and over the fish of the sea, and over the fowl of the air, and over every living thing that moveth upon the earth.’ This is the only true and solid foundation of man’s dominion over external things_ The earth, therefore, and all things therein, are the general property of all mankind, exclusive of other beings, from the immediate gift of the Creator.”
2 William Blackstone, Commentaries *208. Grotius viewed the power of eminent domain as the right of the state or the public to exercise dominion over what was already theirs for the sake of the public good. In contrast, the common law viewed *34 the power of eminent domain as the public acting “as an individual, treating with an individual for an exchange.” Id.
The Fifth Amendment of the United States Constitution, which was ratified in 1791, provides: “[N]or shall private property be taken for public use, without just compensation.” Justice Thomas interprets the Fifth Amendment as follows:
“The most natural reading of the Clause is that it allows the government to take property only if the government owns, or the public has a legal right to use, the property, as opposed to taking it for any public purpose or necessity whatsoever. At the time of the founding, dictionaries primarily defined the noun ‘use’ as ‘the act of employing any thing to any purpose.’ 2 S. Johnson, A Dictionary of the English Language 2194 (4th ed. 1773).... The term ‘use,’ moreover, ‘is from the Latin utor, which means “to use, make use of, avail one’s self of, employ, apply, enjoy, etc.’” J. Lewis, Law of Eminent Domain § 165, p. 224, n. 4 (1888). When the government takes property ... and the public has no right to use the property, it strains language to say that the public is ‘employing’ the property, regardless of the incidental benefits that might accrue to the public from the private use. The term ‘public use,’ then, means that either the government or its citizens as a whole must actually ‘employ’ the taken property. See id., at 223 (reviewing founding-era dictionaries).”
Kelo v. City of New London, 545 U.S. 469, 508-09, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005) (Thomas, J., dissenting). Consequently, reading the natural language of the Federal Constitution along with the historical and philosophical backdrop of the common law, it appears that the Founders understood the right of eminent domain to be the right of the government to take private property only if the government or public would actually use it. This view comports with Blackstone’s view of eminent domain as an exchange rather than Grotius’s view of eminent domain as the state’s exercise of dominion over private property for the public good.
Alabama’s original eminent-domain provision in the 1819 Constitution was nearly identical to the eminent-domain provision of the Federal Constitution: “[N]or shall any person’s property be taken or applied to public use, unless just compensation be made therefor.” § 13, Ala. Const. 1819. Despite the fact that other parts of our current eminent-domain provision are different from the Alabama Constitution of 1819, the operative language at issue in this case is essentially the same: “[P]ri-vate property shall not be taken for, or applied to public use, unless just compensation be first made therefor.” § 23, Ala. Const. 1901.
Thus, reading § 23 in light of Alabama’s original eminent-domain provision, the similar federal constitutional provision, and the common law, the conclusion is that a “taking” under § 23 requires an exchange between the State and the private-property owner by which the State provides just compensation for property that the State or the public will actually employ. Consequently, the Town of Gurley’s zoning ordinance is not a “taking” under § 23. There has been no exchange between the Town and M & N Materials, Inc., and neither the public nor the State are going to use or employ the property in question. On the contrary, instead of taking the property so that the State or public can use it, the Town has left the property with its owners but has restricted how the private owner may use it. While this appears to be a case of spot zoning, or at least arbitrary and capricious zoning, it is not a taking under § 23.

*35
III. Conclusion

This case is about zoning, not takings. Every act of zoning is a “taking” in a sense, because the state takes some rights of use away from the owner. Nevertheless, the type of taking contemplated by § 23, Ala. Const. 1901, is a taking where property is exchanged from the private-property owner to the state for the state or public’s employment. Because the Town of Gurley has not taken property in that manner in this case, M & N’s injuries are not redressable through § 23, Ala. Const. 1901. M & N still has a remedy available through declaratory and injunc-tive relief, as do all private-property owners who are subjected to spot zoning or arbitrary and capricious zoning ordinances. Thus, although I encourage M & N to reinstate its claim for declaratory and in-junctive relief, I cannot grant M & N the relief it seeks by stretching § 23, Ala. Const. 1901, beyond what it says and means. Therefore, I concur in overruling the applications for rehearing.

. M & N sought a judgment declaring "the annexation of the subject property and/or the zoning restrictions placed on the property as well as the other actions described herein, void, invalid, and/or unconstitutional.” M & N’s claims for declaratory relief were dismissed without prejudice after the jury returned its verdict and thus may be reinstated following the Town of Gurley's appeal.

. Alabama follows the minority rule on spot zoning. The majority rule is that “rezoning of a small tract of land out of harmony and in conflict with a comprehensive plan may constitute ‘spot zoning.’ ” Haas, 289 Ala. at 21, 265 So.2d at 568.